**MINNEAPOLIS AUTO AUCTION, LTD., et al., Appellants,**

**v.**

**SPICER AUTO SALES, INC., et al., Respondents,**

**Tri–State Insurance Company, Defendant.**

**TRI-STATE INSURANCE COMPANY OF MINNESOTA, Interpleading Crossclaimant, Respondent,**

**v.**

**The STATE Of Minnesota, Green Lake State Bank, Interpleading Defendants, Respondents,**

**Mid–State Auto Auction, Interpleading Defendant, Appellant,**

**Robert D. Walker, Thomas Goris, Don Burris, Interpleading Defendants, Respondents,**

**John Doe, Interpleading Defendant.**

No. C6–88–490.

Court of Appeals of Minnesota.

July 26, 1988.

Review Granted Sept. 28, 1988.

Stephan A. Pezalla, Russell, McLeod, Mosher & Pezalla, Golden Valley, for Minneapolis Auto Auction, Ltd., et al.

Mark E. Fuller, Fuller & Finney, Edina, for Spicer Auto Sales, Inc., et al.

Richard D. Egan, Robert I. Lang, Lang, Pauly & Gregerson, Ltd., Minneapolis, for Tri–State Ins. Co. of Minnesota, Interpleading Crossclaimant.

Hubert H. Humphrey, III, State Atty. Gen., Peggy L. Bunch, Asst. Atty. Gen., St. Paul, for State of Minn.

Daniel J. Sheran, Lindquist & Vennum, Minneapolis, for Green Lake State Bank, Interpleading Defendants.

Daniel J. Roth, Austin & Roth, Minneapolis, for Mid–State Auto Auction, Interpleading Defendant.

Richard L. Ronning, Willmar, for Robert D. Walker.

Thomas Goris, Willmar, pro se.

Don Burris, Redwood Falls, pro se.

Heard, considered and decided by FOLEY, P.J., and NIERENGARTEN and SCHULTZ,* JJ.

## OPINION

FOLEY, Judge.

Minneapolis Auto Auction, Ltd., Alamo Rent–A–Car, Inc. and Mid–State Auto Auction appeal from a summary judgment granted in favor of respondent Tri–State Insurance Company of Minnesota.[1] Tri–State is the corporate surety on a $25,000 license bond posted by respondent Spicer Auto Sales, Inc.

All plaintiffs and interpleading defendants lost money in transactions with Spicer. All sought recovery from the license bond. The trial court allowed all claims against the bond except for the claims of Minneapolis Auto Auction, Alamo and Mid–State.[2] The trial court determined that these claims fell outside the protective scope of the bond as intended by Minn. Stat. § 168.27, subd. 24 (1986). We reverse.

## FACTS

Minneapolis Auto Auction and Alamo initiated the action leading to this appeal. The original complaint filed by Minneapolis Auto Auction and Alamo named Spicer, Fred Jensen, and Tri–State as defendants. Jensen owns Spicer. Tri–State is the corporate surety for the license bond posted by Spicer. Tri–State was named as a party because Minneapolis Auto Auction and Alamo requested recovery from the license bond.

The complaint requested judgment against Spicer, Jensen and Tri–State for

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. Tri–State Insurance Company and Tri–State Insurance Company of Minnesota are the same entity.

2. The claim of Green Lake State Bank was also denied against the bond. However, Green Lake does not appeal and even if it had, its claim is based on a security agreement, not on money lost in the transfer of cars.

$7,010 plus interest. The amount represents the unpaid balance of the purchase price of a 1986 Buick Century. Spicer bought the Buick from Alamo at an auction operated by Minneapolis Auto Auction. Spicer originally tendered a check for $8,710 to Minneapolis Auto Auction for the car. However, the check was returned for insufficient funds. Spicer later made a partial payment of $1,700.

Spicer and Jensen denied all claims. Tri-State answered, alleging that neither Minneapolis Auto Auction nor Alamo were protected by the bond. Tri-State also filed a cross-claim for interpleader, naming all parties claiming against the bond. The interpleading defendants include:

(1) The State of Minnesota;
(2) Mid-State Auto Auction;
(3) Green Lake State Bank;
(4) Robert D. Walker;
(5) Thomas Goris; and
(6) Don Burris.

Respondent State of Minnesota's claim was for $5,457.70. The amount equalled the balance of unpaid taxes, transfer fees and filing costs.

Mid-State's claim derived from the sale of three cars to Spicer. The price of the cars was $9,640. Spicer paid for the cars by check. The check was returned for insufficient funds. Title to all three cars was transferred to Spicer.

The claim of respondent Green Lake State Bank resulted from the breach of a financing agreement. Green Lake alleged that Spicer failed to pay the bank agreed-upon proceeds from the sale of certain financed cars. Green Lake sought $80,631.69 in damages.

Respondent Robert D. Walker is claiming a loss of $10,000. This amount was stipulated to be the amount of car payments made by Walker. Walker bought a 1986 Oldsmobile from Spicer. When the car developed mechanical problems, Spicer agreed to take the car back and to refund any car payments. Spicer took back the car but did not reimburse Walker.

The claim of respondent Thomas Goris arose from the sale of a 1985 Buick Park Avenue. Spicer bought the car from Goris. Spicer paid for the car by check. The check was returned for insufficient funds after title was transferred to Spicer. Although Spicer made a subsequent payment to Goris, Spicer still owed Goris $4,080.

Respondent Don Burris' claim was for money owed from the sale of a 1982 Oldsmobile. Burris sold the car to Spicer for $2,800. Title passed to Spicer, but Spicer made no attempt to pay Burris.

On July 10, 1987, the trial court granted Minneapolis Auto Auction and Alamo summary judgment against Spicer. The amount of the judgment entered was $6,810 with interest, a civil penalty of $100 and attorney fees of $250.

The trial court entered another summary judgment on October 28, 1987. The trial court denied Tri-State's motion for summary judgment against the state, Walker, Goris and Burris and granted summary judgment against Minneapolis Auto Auction, Alamo, Mid-State and Green Lake. The trial court found that the losses suffered by Minneapolis Auto Auction, Alamo, Mid-State and Green Lake were not covered by the license bond. Tri-State was also granted summary judgment requiring Spicer and Jensen to indemnify Tri-State for amounts paid against the bond and attorney fees.

Spicer executed a confession of judgment in favor of Mid-State on February 24, 1988. Judgment was entered on February 26, 1988. On the same day, the claims of Minneapolis Auto Auction, Alamo and Mid-State against Jensen were dismissed with prejudice.

The trial court issued a final, inclusive judgment disposing of the case on February 26, 1988. It is from the October 28, 1987 judgment, as incorporated into final judgment, that this appeal is taken. Minneapolis Auto Auction, Alamo and Mid-State appeal the dismissal of their claims against the bond and Tri-State. They argue that the trial court erred in granting summary judgment in favor of Tri-State.

## ISSUE

Did the trial court err in granting summary judgment in favor of Tri–State, thereby dismissing Minneapolis Auto Auction, Alamo and Mid–State's claims against the bond and Tri–State?

## ANALYSIS

### 1. *Standard of Review.*

Summary judgment is proper if no genuine issue of material fact exists and judgment may be entered as a matter of law. Minn.R.Civ.P. 56.03. On review, we may determine:

(1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

There are no questions of material fact in dispute. All transactions and monetary amounts have been agreed to. The sole question on appeal is whether or not the trial court erred in its application of law, specifically, whether or not the trial court correctly determined the protective scope of the motor vehicle dealer bond statute. Minn.Stat. § 168.27, subd. 24 (1986).

### 2. *Scope of Minn.Stat. § 168.27, subd. 24.*

The resolution of this case hinges on the correct interpretation of Minn.Stat. § 168.27, subd. 24. The statute reads:

All persons licensed hereunder shall keep in full force and effect a bond with a corporate surety * * * in the amount of $25,000.00. The bond shall be conditioned on the faithful performance by the licensee of the obligations imposed by the laws of this state, including the conduct required of a licensee by this section and other sections governing the sale or transfer of motor vehicles, and the payment of all taxes, license fees, and penalties. The bond shall be for the benefit of the state of Minnesota and any transferor, seller, or purchaser of a motor vehicle for any monetary loss caused by failure of the licensee to meet the obligations enumerated above. Proceedings on the forfeiture of the bonds shall be commenced in the district court of the county wherein the business of the licensed person was carried on, or if in more than one county, the county in which the offense occurred.

*Id.*

This is a case of first impression. For the first time, Minnesota courts have been asked to define the protective scope and application of the license bond posted by motor vehicle dealers. Minn.Stat. § 168.27, subd. 24. The two specific questions raised are:

(1) Is the bond for the benefit of commercial parties or only for the protection of noncommercial parties?

(2) What type of statutory violation triggers application of the bond?

In order to answer these two questions, we rely on the plain language and manifest intent of the statute.

#### a. *Parties Protected.*

■ Minneapolis Auto Auction, Alamo and Mid–State are commercial entities engaged in the sale, purchase and transfer of motor vehicles. They all lost money in various business dealings with Spicer. They contend that the license bond is intended to protect their interests. Consequently, they seek recovery for their losses from the bond and Tri–State.

Tri–State alleges the bond is not intended for the benefit of Minneapolis Auto Auction, Alamo and Mid–State. Tri–State proposes that the bond provision is meant to safeguard only noncommercial parties who suffered monetary losses in their dealings with Spicer. Although the trial court did not expressly identify any commercial or noncommercial limitation, its decision coincides with Tri–State's interpretation. We disagree.

The language of Minn.Stat. § 168.27, subd. 24 is clear. It states:

The bond shall be for the benefit of * * * *any* transferor, seller, or purchaser of a motor vehicle for *any* monetary loss caused by the failure of the licensee to meet the obligations enumerated above.

*Id.* (emphasis added). No distinction is made between commercial and noncommercial parties. If the legislature intended this statute to protect only noncommercial parties, it could easily have inserted distinctive language. It did not. Further, given the nature of the statute, it would be difficult to draft discriminatory language that would pass constitutional muster. The bond is for the benefit of *"any* transferor, seller or purchaser" of motor vehicles. *Id.* The logical conclusion, based on the clarity of the statute, is that Minneapolis Auto Auction, Alamo and Mid–State are protected by the bond.

(b) *Violations.*

■ The trial court determined that the bond was intended to benefit only those parties who lost money as a result of dealer license violations. Minneapolis Auto Auction, Alamo and Mid–State all lost money due to Spicer's "issuance of dishonored checks." Minn.Stat. § 609.535 (1986). The trial court found the issuance of bad checks to be a nonlicense violation. As a result, the trial court determined that the monetary losses of Minneapolis Auto Auction, Alamo and Mid–State did not trigger application of the bond provision. Minn.Stat. § 168.27, subd. 24.

The trial court found the language of the statute to limit the scope of applicability. It said that:

"Obligations imposed" implies that the bond is payable upon a breach of an affirmative duty pertaining to the sale or transfer of motor vehicles. Further, the statute was amended in 1985 to include "and other statutes governing sale or transfer." This insertion would suggest an inclusiveness of only those laws specifically regulating sale and transfer of motor vehicles.

The trial court further looked to the decision in *State v. United States Fidelity & Guaranty Co.,* 303 Minn. 131, 226 N.W.2d 322 (1975), to support its position.

In *United States Fidelity,* the Minnesota Supreme Court held that the required liquor license bond did not protect the state as to the recovery of unpaid workers' compensation taxes. The court found that the language in the liquor licensing bond statute limited the application of the bond. *Id.* at 133, 226 N.W.2d at 324. The applicable liquor licensing bond statute read:

Bonds of manufacturers, wholesalers, and common carriers shall run to the state of Minnesota, of "on sale" and "off sale" retail dealers shall run to the municipality in which the license is issued. All such bonds shall be conditioned as follows:

As to manufacturers, wholesalers and common carriers:

(a) That the licensee will obey the law relating to such licensed business;

(b) That the licensee shall pay to the state when due all taxes, license fees, penalties and other charges payable by him under this act, or any other law relating to the manufacture, distribution or sale of intoxicating liquor;

(c) That in the event of any violation of the provisions of law, such bond shall be forfeited to the state of Minnesota as hereinafter provided.

Minn.Stat. § 340.12 (1974).

The supreme court determined the phrase, "the licensee will obey the law relating to such licensed business," limited the bond protection to persons injured by license violations. *United States Fidelity,* 303 Minn. at 133, 226 N.W.2d at 323. It went on to explain that

"the law relating to such licensed business" refers exclusively to the laws and ordinances regulating the sale of liquor. It is settled that statutes are to be construed so as to give effect to every section and part. Thus, we feel that the words of limitation contained in condition (a) are to be given meaning, and therefore effectively circumscribe the applicability of the clause in question.

*Id.* at 133, 226 N.W.2d at 323–24 (citation omitted).

Tri–State argues that the scope of the motor vehicle bond statute should similarly be limited to license violations. The trial court agreed with this contention. However, there is a distinct difference in the motor vehicle bond provision. Minn.Stat.

§ 168.27, subd. 24. The language in the motor vehicle bond provision is much broader. *Id.* The liquor license bond provision expressly states:

> That the licensee will obey the *law relating to such licensed business.*

Minn.Stat. § 340.12 (1983) (emphasis added). The motor vehicle bond provision conditions the bond

> on the *faithful performance by the licensee of the obligations imposed by the law of this state,* including the conduct required of a licensee by this section and other sections governing the sale or transfer of motor vehicles, and the payment of all taxes, license fees and penalties.

Minn.Stat. § 168.27, subd. 24 (emphasis added). It is evident that the motor vehicle bond is conditioned upon a much broader base of obligations. It expressly requires compliance with state laws unrelated to licensure as well as those related to licensure. *Id.*

Further, the trial court allowed the claims of Walker, Goris and Burris against the bond. All three men lost money in similar dealings with Spicer. They lost money for the same reasons Minneapolis Auto Auction, Alamo and Mid–State lost money. All sold cars to Spicer and were not paid. In fact, Goris' claim arose in the exact same manner as did the claims of Minneapolis Auto Auction, Alamo and Mid–State. He sold a car to Spicer and the check from Spicer was returned for insufficient funds. Given the trial court's decision that only license violations trigger the bond provision, it is illogical to allow some claims arising from nonlicense violations but not others. If the trial court followed its own interpretation, the claims of Goris, Walker and Burris would be dismissed along with those of Minneapolis Auto Auction, Alamo and Mid–State. The trial court offers no explanation as to why those claims were singled out.

In formulating our interpretation of Minn.Stat. § 168.27, subd. 24, we rely on the plain language of the statute. The language does not distinguish between commercial and noncommercial parties.

Further, the bond is conditioned on the "faithful performance by the licensee," inclusive of the license requirements and laws relating to the transfer of motor vehicles. *Id.* The issuance of a dishonored check is a violation of the laws of this state. Minn. Stat. § 609.535. Money lost due to payment by bad check triggers the bond provision. Minn.Stat. § 168.27, subd. 24. Even if the statute limits the bond's application to licensing and transfer violations, we find it clear that payment is an integral part of the sale of a car.

## DECISION

We disagree with the trial court's interpretation and application of Minn.Stat. § 168.27, subd. 24. For these reasons, we find summary judgment inappropriate and reverse the decision of the trial court.

Reversed.