**MINNEAPOLIS AUTO AUCTION, LTD., et al., Respondents,**

v.

**SPICER AUTO SALES, INC., et al., Respondents,**

**Tri–State Insurance Company, Defendant.**

**TRI–STATE INSURANCE COMPANY OF MINNESOTA, Interpleading Cross–Claimant, Petitioner, Appellant,**

v.

**The STATE of Minnesota, Interpleading Defendant,**

**Green Lake State Bank, Mid–State Auto Auction, Robert D. Walker, Thomas Goris, Don Burris, Interpleading Defendants, Respondents,**

**John Doe, Interpleading Defendant.**

No. C6–88–490.

Supreme Court of Minnesota.

May 5, 1989.

Richard D. Egan, Robert I. Lang, Minneapolis, Minn., for appellant.

Daniel J. Roth, Minneapolis, for Mid-State Auto Auction. Stephen A. Pezalla, Golden Valley, for Minneapolis Auto Auction, Ltd. and Alamo Rent-A-Car, Inc.

KEITH, Justice.

Tri–State Insurance Company, a corporate surety on a motor vehicle dealer's license bond maintained by Spicer Auto Sales, Inc., obtained further review of a decision of the court of appeals reversing the summary judgment entered in its favor in the trial court. The appellate court determined that claims filed against the bond by Minneapolis Auto Auction, Inc. and Alamo Rent–A–Car, Inc. (hereafter referred to collectively as Minneapolis Auto) and Mid–State Auto Auction were recoverable under Minn.Stat. § 168.27, subd. 24 (1986). We affirm.

The transactions which gave rise to the instant claims arose under similar circumstances. In August 1986, Alamo sold a 1986 Buick Century to Spicer Auto at an auction conducted by Minneapolis Auto for the purchase price of $8,710. A check issued in the amount of the purchase price by Spicer Auto and its owner Fred Jensen was returned unpaid because of insufficient funds. Minneapolis Auto sent Spicer and Jensen a demand for payment of the dishonored check pursuant to Minn.Stat. § 609.535, subd. 3(2) (1988). Spicer paid only $1,700 of the amount due; it has since failed as a business and Minneapolis Auto resorted to recourse against the bond.

Similarly, in October 1986 Mid–State sold two automobiles and one truck to Spicer for a total sales price of $9,640. The check tendered by Spicer and Jensen was twice returned not paid for lack of sufficient funds. Mid–State made a written demand for payment pursuant to section 609.535, subd. 3(2) and, when the demand was not honored, filed its claim against the bond.

The procedural history and posture of this action is more fully detailed in the court of appeals' decision. *Minneapolis Auto Auction v. Spicer Auto,* 427 N.W.2d 702 (Minn.App.1988). For our purposes, it is sufficient to note that the trial court allowed claims filed against the bond by individuals who lost money in automobile sale transactions with Spicer and by the State of Minnesota which claimed a balance of unpaid taxes, transfer fees and filing costs, but denied claims asserted by these commercial or corporate entities. The sole issue presented by this appeal is whether the trial court erred in granting summary judgment in favor of Tri–State based upon its interpretation of Minn.Stat. § 168.27, subd. 24 to conclude that these claims fell outside the statutory coverage of the bond. As no material facts are disputed, the inquiry is whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota,* 426 N.W.2d 425, 427 (Minn.1988).

Minn.Stat. § 168.27, subd. 24 provides in pertinent part as follows:

> **BONDS.** All persons licensed hereunder shall keep in full force and effect a bond with a corporate surety to be approved by the registrar of motor vehicles in amounts as herein provided; in the case of boat trailer, snowmobile trailer, horse trailer or motorized bicycle dealers in the amount of $5,000; and as to all other persons in the amount of $25,000. *The bond shall be conditioned on the faithful performance by the licensee of the obligations imposed by the laws of this state, including the conduct required of a licensee by this section and other sections governing the sale or transfer of motor vehicles,* and the payment of all taxes, license fees and penalties. The bond shall be for the benefit of the State of Minnesota and any transfer-

or, seller, or purchaser of a motor vehicle for any monetary loss caused by failure of the licensee to meet the obligations enumerated above.

(Emphasis added). We agree with the appellate court that the statute draws no distinction between commercial and non-commercial parties asserting claims arising out of the sale or transfer of motor vehicles.

Tri–State urges a far more restrictive interpretation of section 168.27, subd. 24 than that adopted by the court of appeals. It contends that the bond was not designed to protect against any loss resulting from a violation of any Minnesota statute, but instead contemplates coverage only for losses resulting from a violation of duties imposed upon a motor vehicle dealer as a licensee. Its argument is supported by a rather strained attempt to find language of limitation in what it views as competing clauses in the legislation and by its misplaced reliance upon *State v. United States Fidelity & Guaranty Company*, 303 Minn. 131, 226 N.W.2d 322 (1975). We find Tri–State's arguments unpersuasive.

In *United States Fidelity*, this court found a liquor license bond was conditioned only on violations of liquor licensing laws. *Id.* at 133, 226 N.W.2d at 323–24. The statute at issue there, Minn.Stat. § 340.12 (1974) was more restrictive because its use of the phrase "the law relating to such licensed business" specifically limited the scope of the liquor license bond's coverage. The statute and decision are both quite distinguishable from the matter at issue. The bond in this case, by its unambiguous language is conditioned on the faithful performance by Spicer Auto of obligations imposed by the laws of this state including, but not limited to, those relating to the sale and transfer of motor vehicles.

In our view, the clear and unambiguous language of the statute evinces a legislative intent to provide coverage under the bond not only in the event of a failure of a motor vehicle dealer to perform obligations imposed upon it as a licensee, but also for a violation of obligations imposed upon it in connection with the sale or transfer of a motor vehicle. The dealer's issuance of checks without sufficient funds for the purchase of vehicles constitutes such a violation as to invoke the protection of the bond.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.