UNITED FIRE AND CASUALTY
COMPANY, Respondent,

v.

FIRST FEDERAL SAVINGS BANK,
MORRIS, Minnesota, et al.,
Respondents,

Melvin C. Nietzel, individually and
d/b/a QT Auto Sales, Appellant,

John Doe, Defendant.

No. CX–90–721.

Court of Appeals of Minnesota.

Sept. 11, 1990.

Michael M. Erhardt, Benson, for appellant.

Barbara M. Ross, Jeffrey C. Applequist, Minneapolis, for United Fire and Cas. Co.

Charles C. Glasrud, Morris, for respondents First Federal Sav. Bank, Morris Co-op Ass'n and Dale Greiner.

Harry D. Hohman, Appleton, for respondent Rodney Hamann.

Considered and decided by KALITOWSKI, P.J. and LANSING and MULALLY *, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Melvin Nietzel challenges the trial court's order determining the respective parties' claims against a bankrupt auto dealership surety bond.

## FACTS

This case involves the distribution of funds from an auto dealership bond. O'Keefe Auto Sales was a motor vehicle dealer which had posted a dealer bond pursuant to Minn.Stat. § 168.27, subd. 24, in the amount of $25,000 through respondent United Fire & Casualty Company. When the dealership went out of business and the proprietor filed bankruptcy, a number of claims were filed against the bond. Appellant challenges the trial court's determination concerning four of the claims.

### 1. First Federal claim.

First Federal Savings Bank submitted a claim of $14,706.53. First Federal had provided financing to O'Keefe for six different cars. The bank held the title to all six of these cars as security but had not taken possession of any of them. O'Keefe told the bank that four of the vehicles were not selling on the lot and that he needed the titles to sell them at an auction. The bank, therefore, gave O'Keefe the titles to these four cars. The four cars were sold, but First Federal did not receive any of the proceeds from the sale. O'Keefe sold the fifth vehicle to a party without the title and the bank surrendered the title to the purchaser on the advice of counsel. The sixth car was involved in a collision and towed to a storage lot. By the time First Bank located the car at the storage lot, the amount the bank would have had to pay to release the car was more than the car was worth. Therefore, it forfeited title to the car to the storage lot. First Federal Savings was not the named owner or secured

party on the certificates of title to any of the six vehicles. The court determined that First Federal Bank had an allowable claim of $9,474.16 for the four vehicles sold at the auction.

### 2. Morris Co-op claim.

Morris Co-op Association filed a claim for $10,435. The Co-op had purchased a truck from O'Keefe for $11,435 (which unbeknownst to the Co-op actually belonged to appellant Melvin Nietzel). The Co-op gave O'Keefe two cars worth $3,000 as trade-in. The Co-op wrote two checks to O'Keefe, one for $4,435 and one for $4,000 to cover the remaining balance. At the time of the transaction, O'Keefe had an account receivable at the Co-op for $4,000. Therefore, O'Keefe endorsed the $4,000 check and gave it back to the Co-op to pay off this account. Eventually, Nietzel repossessed his truck under a claim of right to title because O'Keefe never paid him for it. The Co-op received $1,000 back but lost $10,435 on the transaction.

### 3. Rodney Hamann claim.

Hamann gave his truck to O'Keefe to sell and was told he would receive $8,300 from the sale. The book value of the truck at the time was $7,450 and O'Keefe sold it for $6,500. Hamann received no money from the proceeds of that sale. The trial court awarded him the claim of $8,300.

### 4. Melvin Nietzel claim.

Nietzel filed a claim against the bond for $13,650 for six vehicles he placed in O'Keefe's possession to be sold or transferred. O'Keefe gave appellant checks for various amounts for the value of the vehicles. All of these checks were returned for not sufficient funds. Appellant regained possession of one of the vehicles and eventually sold it for $1,300 less than O'Keefe had agreed to pay. Thus, his claim on this vehicle was for $1,300. The trial court did not allow the claim for $1,300 but granted his claims totaling $12,350 for the other five vehicles.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Appellant argues that First Federal's claim should be disallowed in total because it was not covered by the bonding statute. He also argues that Morris Co-op's claim should only be allowed to the extent of $6,435, that Hamann's claim should be allowed only to the extent of $7,400, and that his claim in the amount of $13,650 should be allowed in total.

## ISSUE

Did the trial court err in its determination of claims against O'Keefe Auto Sales' dealership bond?

## ANALYSIS

This case was tried before the court without a jury. The scope of review in a case tried by a court without a jury is limited to determining whether the court's findings are clearly erroneous and whether it erred in its conclusions of law. *Lake Mille Lacs Investment Inc. v. Payne*, 401 N.W.2d 387, 389 (Minn.App.1987).

Whether a party is protected under a motor vehicle dealer's bond may be determined as a matter of law when no material facts are disputed. *See Minneapolis Auto Auction v. Spicer Auto Sales*, 439 N.W.2d 23 (Minn.1989).

### 1. First Federal claim.

■ Appellant claims that the bonding statute, Minn.Stat. § 168.27, subd. 24 (1988), does not provide protection for financiers such as First Federal. Minn.Stat. § 168.27, subd. 24 (1988) reads in part as follows:

> The bond shall be conditioned upon the faithful performance by the licensee of the obligations imposed by the laws of this state, including the conduct required of licensee by this section and other sections governing the sale or transfer of motor vehicles, and the payment of all taxes, license fees, and penalties. The bond shall be for the benefit of the State of Minnesota and any transferor, seller, or purchaser of a motor vehicle for any monetary loss caused by failure of the licensee to meet the obligations enumerated above.

Only one case in the State of Minnesota has addressed the bonding statute. *See Minneapolis Auto Auction v. Spicer Auto Sales, Inc., et al.*, 427 N.W.2d 702 (Minn. App.1988); *Minneapolis Auto Auction v. Spicer Auto Sales, Inc. et al.*, 439 N.W.2d 23 (Minn.1989). This case held that commercial rent-a-car and auto auction companies which sold vehicles to the dealer qualified as "transferors" or "sellers," within the meaning of the bond requirement statute. The case also held that the bond statute was not limited to losses arising from the dealer's violation of duties as a licensee, but also applied to losses arising from the dealer's issuance of insufficient funds checks for the purchase of vehicles from both the rent-a-car and the auto auction companies. The court of appeals decision and the supreme court decision in *Minneapolis Auto Auction* were essentially the same. A footnote in the Minnesota Court of Appeals decision, however, stated that:

> The claim of Green Lake Bank was also denied against the bond. However, Green Lake does not appeal and even if it had, its claim is based on a security agreement, not on money lost in the transfer of cars.

*Minneapolis Auto Auction*, 427 N.W.2d at 703 n. 2.

Appellant argues that First Federal has a claim based on a security agreement, and is not a transferor, seller or purchaser of a motor vehicle entitled to protection under the bond statute. We agree. Although the dicta in *Minneapolis Auto Auction* is not controlling, other states have addressed this question in regard to their own bond requirement statutes and reached a similar result.

The Supreme Court of Iowa in *Boone State Bank & Trust v. Westfield Insurance Co.*, 298 N.W.2d 315 (Iowa 1980) held that an auto dealers floor plan financier could not recover under the statutory dealer's bond. I.C. § 322.4(7) extends the bond's coverage to "any person dealing or transacting business with said dealer in connection with any motor vehicle."

The court in Iowa reasoned that the bond is designed primarily to benefit the motor vehicle owner, and not a financier. Security interests and motor vehicle inventories are given statutory protection only under the uniform commercial code. The court also reasoned that the relatively small bond of $25,000 would not provide much protection if it were intended to cover inventory financiers as well as vehicle purchasers. *Id.* at 317.

In *Wooten v. G.M.H. Auto Sales, Inc. et al.*, 187 Ga.App. 331, 370 S.E.2d 165 (1988) the Court of Appeals of Georgia affirmed the trial court's ruling that, as a matter of law, the statutory bond requirement was not intended for the benefit of a holder of security interests in motor vehicles who sustained damages as a result of fraudulent acts by the used car dealer. *Id.* 370 S.E.2d at 167. The bond statute in Georgia reads:

> The required bond * * * shall be payable * * * for the use and benefit of any purchaser and vendees or successors in title of any used motor vehicle * * *.

*Wooten* held that while a security interest holder in a motor vehicle has an interest in the vehicle it is not a purchaser or vendee or a successor in title to the motor vehicle in question. Even though the security interest holder has physical possession of the vehicle's certificate of title, the statute does not apply.

The court in *Wooten* reasoned that the legislature could have easily included security interest holders within the class of people protected under the statute. Further, the court noted the bond was so limited in amount that it was unlikely that the legislature intended to protect these types of security interests. The court concluded that the bond is intended to protect the general public against fraudulent misrepresentation, negligence or breach of warranty of vehicles sold by used car dealers. It is not intended to protect the private interests of a security interest holder in those vehicles. *Id.* at 167–168.

Based on the sound reasoning of the Georgia and Iowa decisions, we hold that banks are not protected under the Minnesota bond statute. First Federal was not a transferor, seller or purchaser of the motor vehicles. It merely held the titles as security for money which it loaned to O'Keefe. As in Georgia and Iowa, the minimal, $25,000 bond required in Minnesota would not go very far in protecting all claimants if holders of security interests were included among them. We conclude that the statute is intended to protect the general public and that banks have other means available to protect themselves in their dealings with automobile dealers. Therefore, we find the trial court erred in allowing First Federal's claim against the dealership bond.

2. Other claimants.

a. Morris Co-op claim.

■ Appellant claims that $4,000 of Morris Co-op's claim should not be allowed. Appellant argues that the check which Morris Co-op wrote to O'Keefe Auto Sales and which O'Keefe immediately endorsed back to the Co-op to pay an outstanding account was not a "monetary loss" as required under Minn.Stat. § 268.27, subd. 24. According to appellant, Morris Co-op only suffered an accounting loss.

While the Co-op's loss of $4,000 is not in cash, it is still a monetary loss. The Co-op wrote a check to O'Keefe Auto Sales as payment for the truck. The fact that O'Keefe endorsed that check back to the Co-op as payment on an unrelated matter is irrelevant. The Co-op gave O'Keefe $10,435 in cash, credit and vehicles as a result of this transaction and received nothing in return. The trial court's finding that this is a monetary loss is not clearly erroneous.

b. Hamann claim.

■ Appellant argues that Hamann's claim should only be allowed to the extent of the book value of the vehicle which O'Keefe sold. However, Hamann testified at the hearing that O'Keefe told him they could get him $8,300 cash for his truck if he left it with them. Since there was testimony on the record that Hamann and O'Keefe had an agreement that O'Keefe would sell the truck for Hamann and in return Hamann would receive $8,300, the court's finding that Hamann is entitled to a claim of $8,300 is not clearly erroneous.

### c. Nietzel claim.

Appellant argues the trial court was clearly erroneous in not allowing his claim for the truck which O'Keefe subsequently sold to Morris Co-op Association for $10,000. However, appellant kept the title to this truck and when he did not receive payment from O'Keefe, appellant repossessed it from Morris Co-op. Appellant sold the truck six months later for $8,700. He claims he is entitled to the loss of $1,300 due to O'Keefe's breach of their contract.

Appellant recovered the truck within two or three weeks after O'Keefe agreed to sell it. He kept the truck for another six months before selling it for $8,700. The trial court could have found the reduced value after six months reflected his use of the truck. Therefore, the trial court's exclusion of appellant's claim on this truck is not clearly erroneous.

### DECISION

First Federal's claim against O'Keefe's dealership bond is not allowed because a security interest holder is not a protected party under the Minnesota bonding statute. The trial court was not clearly erroneous in its determination regarding the other claims.

Affirmed in part and reversed in part.