**METRO MILWAUKEE AUTO AUCTION, Respondent,**

v.

**Corey COULSON, an individual, d/b/a Corey's Auto Sales, et al., Defendants,**

**Western Surety Company, Appellant.**

**No. C9–99–690.**

Court of Appeals of Minnesota.

Jan. 4, 2000.

Review Denied March 14, 2000.

Eric J. Magnuson, Todd P. Zettler, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, and Michael J. Spillane, Spillane Attorneys, Edina, MN (for respondent).

Timothy C. Cook, Moore, Costello & Hart, P.L.L.P., Minneapolis, MN (for appellant).

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.*

## OPINION

SHUMAKER, Judge.

Appellant Western Surety Company challenges the district court's grant of summary judgment to respondent Metro Milwaukee Auto Auction, arguing that the district court erred in its application of the motor vehicle dealer's bond required by Minn.Stat. § 168.27, subd. 24 (1998), by misapplying the worthless check laws, and by awarding attorney fees. We affirm.

## FACTS

The facts are undisputed. Respondent Corey Coulson d/b/a Corey's Auto Sales is a Minnesota-licensed motor vehicle dealer with a dealership in Houston, Minnesota. Respondent Metro Milwaukee Auto Auction sells motor vehicles by auction to dealers and has its principal place of business in Caledonia, Wisconsin.

On September 17, 1997, Metro held a motor vehicle auction in Wisconsin. Coulson bought an automobile for $19,620 and paid by a check drawn on a Minnesota bank. The bank refused to honor the check because of insufficient funds in Coulson's account. Then Coulson paid $10,000 to Metro by a money order drawn on another Minnesota bank, but did not pay the balance owing on the car.

Metro made a claim for the balance against Coulson's motor vehicle dealer indemnity bond. The bonding company, appellant Western Surety Company, refused the claim. Metro sued Coulson and Western Surety.

Metro and Western Surety made cross-motions for summary judgment. Western Surety also moved for default judgment against Coulson. Ruling that Metro was entitled to collect against Coulson's bond, the district court granted Metro's motion and awarded attorney fees. The court denied Western Surety's summary judgment motion but granted its motion for default judgment against Coulson. On appeal, Western Surety contends that the district court erred by giving the bond extraterritorial application, by ruling that Coulson violated a law that triggered application of the bond, and by awarding attorney fees.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. A bonded, Minnesota-licensed automobile dealer issued a worthless check to purchase an automobile from a dealer's auction in Wisconsin. Did · the district court err in holding that the seller may recover against the bond even though the underlying transaction occurred outside Minnesota?

2. Did the district court err in ruling that civil liability for the issuance of a worthless check attached so as to trigger bond liability even though the holder of the check failed to mail to the drawer notice of dishonor?

3. Did the district court err in awarding attorney fees?

## ANALYSIS

Because the facts are undisputed, we are asked to review only the district court's rulings on issues of law. We review issues of law de novo. *Art Goebel, Inc. v. North Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn.1997) ("A *de novo* standard of review is used to determine whether the district court erred in its application of the law.") We need not defer to the district court when reviewing legal issues. *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn.1977).

### I.

 As a condition of his motor vehicle dealer's license, Coulson was required by statute to keep in effect an indemnity bond:

All persons licensed hereunder shall keep in full force and effect a bond with a corporate surety * * * in the amount of $50,000. The bond shall be conditioned on the faithful performance by the licensee of the obligations imposed by the laws of this state, including the conduct required of a licensee by this section and other sections governing the sale or transfer of motor vehicles, and the payment of all taxes, license fees, and penalties. The bond shall be for the benefit of the state of Minnesota and any transferor, seller, or purchaser of a motor vehicle for any monetary loss caused by failure of the licensee to meet the obligations enumerated above.

Minn.Stat. § 168.27, subd. 24 (1998).

Western Surety provided a bond for Coulson and agreed to

indemnify the State of Minnesota and any transferor, or seller, or purchaser of a motor vehicle for any monetary loss caused by failure of [Coulson] to meet the obligations imposed by the laws of this state, including the conduct required of a licensee by M.S. 168.27 * * *.

Western Surety contends that the statute and the bond were intended to apply only to transactions in Minnesota. Therefore, because Coulson purchased the automobile in Wisconsin, the district court erred in holding Western Surety liable for Coulson's failure to satisfy the full purchase price owing Metro.

 Whether a party is protected under a motor vehicle dealer's bond may be determined as a matter of law when no material facts are in dispute. *Minneapolis Auto Auction, Ltd. v. Spicer Auto Sales, Inc.*, 439 N.W.2d 23, 24 (Minn.1989). Generally, a bond written in conformity with a statute must be read with the statute, and the statute limits the scope of the bond. *Nelson Roofing & Contracting, Inc. v. C.W. Moore Co.*, 310 Minn. 140, 142, 245 N.W.2d 866, 868 (1976). The earliest statement of this principle in Minnesota is in *Combs v. Jackson*, 69 Minn. 336, 337, 72 N.W. 565, 566 (1897):

Where a bond is thus given, pursuant to the provisions of a statute, it must be construed in the light of the statute, and extended, as well as limited in its scope, to those cases contemplated by the statute, unless violence would be done to the language of the bond by such construction.

Western Surety argues it is clear from the language of Minn.Stat. § 168.27 (1998)

that the legislature intended to limit the bond to statewide application. In addition to the bond language in subdivision 24, Western Surety points to subdivision 25, which states that "[i]t is the intent and purpose of this section to establish a uniform statewide system of bonding motor vehicle dealers * * *." Minn.Stat. § 168.27, subd. 25. Finally, Western Surety contends that Minnesota statutes have no extraterritorial effect unless the legislature expressly gives them such effect.

■ Where the language of a statute is clear and unambiguous, courts must enforce its plain meaning. Minn.Stat. § 645.16 (1998); *see also Homart Dev. Co. v. County of Hennepin*, 538 N.W.2d 907, 911 (Minn.1995) (stating that if a statute is free from ambiguity, courts look only to the statute's plain meaning). We may not read ambiguity into an otherwise clear statute under the guise of statutory interpretation. *Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986) (stating that if a statute is clear and unambiguous, court may not attempt to construe or interpret it, but must "give effect to the statute's plain meaning.").

■ Minn.Stat. § 168.27, subd. 24, requires every Minnesota-licensed *motor vehicle dealer* to obtain a bond for the benefit of the state *and any transferor, seller, or purchaser of a motor vehicle* for any loss *caused by* the dealer's failure to perform its legal obligations. Neither the statute nor Western Surety's bond contains any language limiting the bond's application to Minnesota transferors, sellers, or purchasers, or to sales transactions occurring in Minnesota. Had the legislature intended to impose a geographical limitation or to restrict the class of beneficiaries, it could have so stated. *See, e.g., United Power Ass'n v. C.I.R.*, 483 N.W.2d 74, 80 (Minn.1992) ("If legislature intended to limit the [tax] exemption * * * it could have done so in clear language. But it did not, and we are left to conclude that respondent's exemption claim must prevail.").

Giving effect to the plain and unrestricted language of Minn.Stat. § 168.27, subd. 24, would be in accord with public policy to protect persons doing business with Minnesota-licensed car dealers from frauds and defaults by those dealers. The sense of a plain reading of the statute, and of the statewide statutory system of motor vehicle dealer licensing, is that a dealer cannot obtain a license without first providing financial security to protect all his customers and all others with whom the dealer conducts motor vehicle sales transactions from losses the dealer causes. Under this reading of Minn.Stat. § 168.27, subd. 24, the focus is on who caused a loss and not where the loss occurred. The statute clearly protects against losses caused by Minnesota-licensed dealers. It would subvert the plain meaning of the statute to shift the focus to the geographical location of the transaction leading to the loss.

Not only is there no geographical limitation in Minn.Stat. § 168.27, subd. 24, the transaction in dispute was not entirely extraterritorial. Coulson is a dealer licensed in Minnesota. His dealership is in Minnesota. He drew a check on a Minnesota bank. That bank dishonored the check. He drew a money order on another Minnesota bank. He made many telephone calls from Minnesota to Metro regarding payment for the automobile. Coulson's failure to meet his financial obligation to Metro occurred in Minnesota when the bank dishonored Coulson's check. Thus, a Minnesota licensee caused a monetary loss in Minnesota to a seller and transferor of a motor vehicle. Minn. Stat § 168.27, subd. 24, and Western Surety's bond written under that statute were intended to protect against such defaults. The district court did not err in ruling that Metro is entitled to collect on Coulson's bond.

## II.

■ Western Surety next argues that Coulson had not failed to abide by any

obligation imposed under Minnesota law, and, therefore, liability on the bond never arose.

Western Surety contends that Coulson's NSF check was delivered to Metro in Wisconsin, and Metro failed to give the "notice of dishonor" that is a condition precedent to triggering both civil and criminal "bad check" laws.

■ Minn.Stat. § 332.50 (1998) creates civil liability for issuance of a worthless check. There is no dispute that Coulson issued a worthless check drawn on a Minnesota bank. When a Minnesota-licensed motor vehicle dealer issues a worthless check, the dealer violates Minnesota law and that triggers the bond given under Minn. Stat. § 168.27, subd. 24:

> The bond in this case, by its unambiguous language is conditioned on the faithful performance by [the dealer] of obligations imposed by the laws of this state including, but not limited to, those relating to the sale and transfer of motor vehicles.

> In our view, the clear and unambiguous language of the statute evinces a legislative intent to provide coverage under the bond not only in the event of a failure of a motor vehicle dealer to perform obligations imposed upon it as a licensee, but also for a violation of obligations imposed upon it in connection with the sale or transfer of a motor vehicle. The dealer's issuance of checks without sufficient funds for the purchase of vehicles constitutes such a violation as to invoke the protection of the bond.

*Minneapolis Auto Auction, Ltd.*, 439 N.W.2d at 25.

Minn.Stat. § 332.50, subd. 2(b), provides that civil liability for a dishonored check attaches if the check is not paid within 30 days after the holder mails to the drawer a notice of dishonor. Minn.Stat. § 609.535 (1998) contains a comparable provision for the attachment of criminal liability.

Metro did not mail a notice of dishonor to Coulson. But Coulson had for 30 days

actual notice that his check had been dishonored. Relying on Minn.Stat. § 332.50, subd. 3, the district court ruled that Coulson's actual notice prevented him, or Western Surety, from raising as a defense to civil liability the fact that Metro never mailed a notice of dishonor.

Western Surety argues that neither civil nor criminal liability will attach for the issuance of a dishonored check unless the holder mails the requisite notice of dishonor to the drawer. The surety contends that the failure of the drawer to *receive* the notice is not a defense if he had actual notice of the dishonor for 30 days. Western Surety distinguishes between *sending* the notice and *receiving* it. With this distinction, the holder's failure to mail the notice negates liability for a worthless check even if the drawer has had actual notice of dishonor for at least 30 days.

■ Although Minn.Stat. § 332.50, subd. 3, uses the language "shall be sent" and "[f]ailure of the drawer to receive," we hold that Western Surety's interpretation is incorrect. The purpose of the notice requirement is to ensure that the drawer · knows that the check has been dishonored and that he might be subject to various statutory penalties and to criminal as well as civil liability unless he pays it. Subdivision 2(b) provides a type of grace period so that liability does not attach until after 30 days from the time the drawer had knowledge of the dishonor. If the drawer had actual knowledge of dishonor for 30 days, subdivision 3 provides that he cannot raise the defense that he did not receive a notice that would have provided him with knowledge of dishonor.

■ The pivotal aspects of Minn.Stat. § 332.50, subds. 2 and 3, are that the drawer have knowledge of the dishonor and a 30–day grace period before liability will attach. Knowledge of dishonor can come through written notice the holder sends by mail or through actual knowledge. The more reasonable interpretation of the statute is that liability attaches if

the drawer has knowledge of dishonor through either means and does not pay the check within the 30–day grace period. We hold that the district court did not err in ruling that Coulson's actual knowledge of dishonor for 30 days prevented him from raising the defense that he did not receive a notice of dishonor from Metro.

A stronger argument could be made that, although actual knowledge of the dishonor for 30 days will not prevent the attachment of liability for the check, failure of the prescribed notice will prevent liability for statutory penalties such as attorney fees. Ostensibly, the drawer who actually knows of the dishonor realizes that he owes the amount of the check. But without specific notice, he would not realize that he might owe various penalties as well.

Whether or not this interpretation has merit, we explain below that the bond statute language is broad enough to permit an award of attorney fees here.

### III.

■ Lastly, Western Surety contends that the district court erred in awarding attorney fees to Metro because the bond statute does not provide for attorney fees and Metro failed to satisfy the preconditions of the worthless check statute.

■ Minn.Stat. § 168.27, subd. 24, provides that the bond shall be for the benefit of any transferor, seller, or purchaser "for any monetary loss" caused by the licensee. Attorney fees incurred in connection with a seller's effort to cure a dealer's default are within the ambit of the broad language "any monetary loss."

### DECISION

The district court did not err in applying a Minnesota-licensed motor vehicle dealer's bond to an underlying sales transaction that occurred outside Minnesota.

The district court did not err in ruling that a drawer who had actual knowledge of his dishonored check for 30 days could not raise the defense that the holder had not mailed notice of dishonor.

The district court did not err in awarding attorney fees.

**Affirmed.**