**METRO GOLD, INC., Appellant,**

v.

**Garrett COIN, et al., Respondents.**

No. A07–2117.

Court of Appeals of Minnesota.

Dec. 9, 2008.

Jeffrey C. Thompson, Jamie L. Anderson, Howse & Thompson, P.A., Plymouth, MN, for appellant.

Robert J. Steigauf, Anne Greenwood Brown, Sjoberg & Tebelius, P.A., Woodbury, MN, for respondents.

Considered and decided by HUDSON, Presiding Judge; KALITOWSKI, Judge; and BJORKMAN, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Metro Gold, Inc. challenges the district court's grant of summary judgment to respondents Garrett Coin and the Estate of Rex Peterson on appellant's claim for costs, interest, and attorney fees pursuant to Minn.Stat. § 604.113. Appel-

lant contends that the district court (1) erred in its application of the law when it found that issuer Rex Peterson did not receive notice of his dishonored check under Minn.Stat. § 604.113 upon appellant's mailing of the notice; and (2) abused its discretion when it determined that the defense of impossibility was a valid defense under Minn.Stat. § 604.113.

## FACTS

On March 28, 2006, appellant Metro Gold sold gold to Rex Peterson for $232,195.50. The parties agreed that appellant would not cash the check Peterson issued to pay for the gold until March 31, 2006. The record indicates that the parties had engaged in similar transactions for several years.

On March 30, 2006, Peterson was admitted into the hospital and fell into a coma. On March 31, 2006, appellant attempted to cash the check but it was returned for nonsufficient funds. On or about April 5, 2006, the check was again processed and again returned for nonsufficient funds.

On April 11, 2006, appellant sent a notice of the dishonored check to Peterson's home. Peterson's nephew received the notice letter on April 12. At this time, Peterson was still in the hospital. During Peterson's stay in the hospital, Peterson's sister spoke with appellant's representatives and informed them that Peterson was in the hospital and incompetent to grant power of attorney. Peterson died in the hospital on April 18, 2006. That same day, appellant filed a complaint seeking full payment on the check and costs, interest, and attorney fees. Appellant also filed a preliminary attachment order with the court seeking seizure of Peterson's property. This order was granted on April 18, 2006, and Peterson's property was seized from his home that evening.

Appellant filed a complaint in Hennepin County District Court, probate division, for the full amount of the check, on April 24, 2006. The district court appointed a personal representative to handle Peterson's estate on or about May 9, 2006. Peterson's assets were returned to his estate's personal representative on or about May 25, 2006. Peterson's estate paid appellant the amount owed on the check in three separate payments, making the final payment on or about December 20, 2006. In November 2006, the parties stipulated that the dispute over costs, interest, and attorney fees would be handled in district court.

On May 29, 2007, appellant filed a summary judgment motion in the district court, seeking costs, interest, and attorney fees, pursuant to Minn.Stat. § 604.113. Respondents filed a cross-summary judgment motion disputing appellant's claims. On September 10, 2007, the district court issued an order denying appellant's motion for summary judgment and granting respondents' motion for summary judgment.

The district court found that due to his medical condition Peterson did not receive actual notice of the dishonored check as required by the statute. The district court also found that it was impossible for respondents to honor the check within the statutory time period due to Peterson's coma and ultimate death.

## ISSUES

1. Did the district court err in finding that issuer Rex Peterson did not receive the notice of the dishonored check, as required by Minn.Stat. § 604.113?

2. Did the district court abuse its discretion in determining that impossibility is a valid defense under Minn.Stat. § 604.113?

## ANALYSIS

### I.

On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 638 (Minn.2006) (citing *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998)).

Appellant contends that the district court erred in finding that actual notice is required under Minn.Stat. § 604.113. Appellant argues that because it sent notice of the dishonored check to Peterson's residence, Minn.Stat. § 604.113 permits appellant to recover costs, interests, and attorney fees from respondents. We disagree.

■ Minn.Stat. § 604.113 governs civil liability associated with the issuance of a dishonored check. This statute permits the recovery of civil penalties if the issuer has notice of the dishonored check and fails to honor the check within 30 days. Minn.Stat. § 604.113, subds. 2, 3. Subdivision 3 provides for notice by mail to the issuer of the dishonored check. *Id.,* subd. 3 ("Notice of nonpayment or dishonor ... shall be sent by the payee or holder of the check to the drawer by certified mail, return receipt requested, or by regular mail, supported by an affidavit of service by mailing, to the address printed or written on the check").

This court has determined that the purpose of the notice requirement in a statute that creates civil liability for issuance of a worthless check is to "ensure that the drawer knows that the check has been dishonored and that he might be subject to ... liability unless he pays it." *Metro Milwaukee Auto Auction v. Coulson,* 604 N.W.2d 111, 116 (Minn.App.2000). Here, the record indicates that although Peterson's nephew received the mailed notice, Peterson did not. It is undisputed that Peterson was in the hospital slipping in and out of a coma when the notice arrived at his residence. Appellant argues that notice was sufficient under Minn.Stat. § 604.113 because the statute requires only that the notice letter be sent to Peterson's address. We disagree.

■ Appellant's argument fails to recognize that the purpose of the statutory notice requirement is to provide *knowledge* to the issuer of the dishonored check. *See Coulson,* 604 N.W.2d at 116. Since Peterson was in the hospital in a coma or otherwise incompetent at the time the notice letter arrived, he could not have known of the dishonored check. Thus, although appellant may have properly sent notice to Peterson, due to Peterson's medical condition the notice did not provide Peterson with the requisite knowledge.

■ With respect to the issue of notice, the statute states that, "[f]ailure of the drawer to receive a regular or certified mail notice sent to that address is not a defense to liability under this section, if the drawer has had actual notice for 30 days that the check has been dishonored." Minn.Stat. § 604.113, subd. 3. Actual notice exists when there is actual knowledge. *See Comstock & Davis, Inc. v. G.D.S. & Assocs.,* 481 N.W.2d 82, 85 (Minn.App. 1992) (finding that actual notice requires knowledge of an enforceable agreement). Thus, if Peterson had actual notice, respondents could not use Peterson's failure to receive the mailed notice as a defense to liability. But on these facts Peterson cannot be said to have actual notice or knowl-

edge of the dishonored check. The record indicates that he was slipping in and out of his coma and that medical staff determined him to be incompetent at the time the notice was mailed to his residence. Because there is no evidence that Peterson had actual knowledge of the notice sent by appellant, he cannot be said to have actual notice under the statute.

In support of its argument that notice is effective upon mailing, appellant relies on *Eischen Cabinet Co. v. Hildebrandt,* 683 N.W.2d 813 (Minn.2004). There, the supreme court held that under a mechanic's lien statute, "service [of notice] by certified mail ... is effective upon mailing." *Id.* at 818. But here, unlike the mechanic's lien statutes, Minn.Stat. § 604.113, subd. 3, requires actual knowledge if there is no actual receipt of the notice letter through certified mail. Moreover, the purpose of subdivision 3 is to give the issuer knowledge of the dishonored check and an opportunity to cure the defect; not to ensure payment for the check recipient. *See Coulson,* 604 N.W.2d at 116. In contrast, the purpose of the mechanic's lien statute is remedial in nature and focuses on the reimbursement of laborers for their services. *Hildebrandt,* 683 N.W.2d at 816. Therefore, even if notice was effective upon mailing, Minnesota law requires that the issuer have actual knowledge of the dishonored check. Minn.Stat. § 604.113.

We conclude that the district court did not err in determining that Minn.Stat. § 604.113 requires actual knowledge and that on these facts Peterson lacked the requisite actual knowledge.

## II.

■ In referring to civil penalties, including service costs, Minn.Stat. § 604.113, subd. 2(b)(1), states that, "[i]n determining the amount of the penalty, the court shall consider the amount of the check and the *reason for nonpayment.*" (Emphasis added.) The statute, in subsequent subparts, permits additional liability for interest and attorney fees. Minn.Stat. § 604.113, subds. 2(b)(2), (3). The statute also requires notice be given to the issuer of the dishonored check before liability attaches and recognizes defenses to an issuer's liability. *Id.,* subds. 2, 3, 5. Thus, the plain language of the statute affords the district court some discretion in determining whether to award civil penalties and in determining whether a defense is applicable.

Here, appellant contends that the reasons why Peterson failed to honor the check within the 30–day statutory period are not relevant because the statutory requirements of Minn.Stat. § 604.113 were satisfied. We disagree.

■ Minn.Stat. § 604.113, subd. 5, provides that any defense that would otherwise be available to the issuer of the check also applies against any liability for penalties. And the Minnesota Supreme Court has determined that the defense of impossibility applies to contractual situations. "[P]erformance of a contractual duty may be excused when, due to the existence of a fact or circumstance of which the promisor at the time of the making of the contract neither knew nor had reason to know, performance becomes impossible...." *Powers v. Siats,* 244 Minn. 515, 520, 70 N.W.2d 344, 348 (1955). Here, there is no evidence to show that Peterson knew, or had reason to know, that he would lapse into a coma and die shortly after issuing a check to appellant. Thus, it was impossible for Peterson to cure the dishonored check.

Moreover, because Minn.Stat. § 604.113, subd. 3, only permits civil penalties after a 30–day period has passed, the statute contemplates an opportunity to cure the dis-

honored check before liability attaches. The *Coulson* case refers to this 30–day statutory period as a "grace period" running from the time the issuer had knowledge of the dishonored check. *Coulson,* 604 N.W.2d at 116 (noting, that the statute "provides a type of grace period so that liability does not attach until after 30 days from the time the drawer had knowledge of the dishonor").

The record indicates that Peterson's check could only be paid through his personal account and that no one except Peterson could access the account. And it is undisputed that there was no power of attorney in existence when Peterson entered the hospital, and that Peterson was incompetent to grant power of attorney before his death. Therefore, Peterson had no ability to cure the dishonored check within the 30–day period.

The record also indicates that Peterson's estate lacked the ability to cure the dishonored check within the 30–day period. Although the personal representative of Peterson's estate was appointed on May 9, 2006, the personal representative did not have access to Peterson's seized assets until May 25, 2006. This date is approximately two weeks beyond the 30–day statutory period, which ended on May 12, 2006. Peterson's estate, therefore, was precluded from an opportunity to cure within the statutory period.

We conclude that on this record the district court properly exercised its discretion when it determined that the defense of impossibility was valid under Minn.Stat. § 604.113 to absolve Peterson of civil penalties.

## D E C I S I O N

Minn.Stat. § 604.113 requires that the issuer of a dishonored check receive actual notice of the dishonored check before civil penalties may attach for failure to honor the check within the statutory time period. And the district court properly determined that impossibility was a valid defense under the statute. Thus, the district court properly denied appellant's motion for summary judgment on costs, interest, and attorney fees pursuant to Minn.Stat. § 604.113.

**Affirmed.**