# RIVIERA IMPORTS, INC. v. ANDERSON USED CARS, INC., AND ANOTHER.

128 N. W. (2d) 159.

May 8, 1964—No. 39,198.

*Dorfman, Rudquist, Jones & Ramstead* and *Howard S. Marker*, for appellants.

*Samuel Saliterman* and *Jonathan Lebedoff*, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the municipal court of Minneapolis denying defendants' motion for amended findings or a new trial.

Both plaintiff, hereinafter called Riviera, and defendant Anderson Used Cars, Inc., hereinafter called Anderson, are corporations licensed to do business in the State of Minnesota, and both are engaged in the business of selling automobiles. Defendant Robert I. Rubin is the president of Anderson.

On September 10, 1959, Anderson sold an Austin Healey automobile to plaintiff for $2,500. Plaintiff purchased the car for resale. Originally, the automobile had been registered by one R. P. Haugland as a 1959 model. The automobile was sold by Anderson as a 1960 model. When plaintiff received the title card, it is not clear from the evidence whether it showed the car to be a 1959 or a 1960 model, because at the time of the trial the year "60" had been crossed out and "59" inserted in its place. The record does not show how this change came about. Instead of transferring title from Haugland to Anderson and then from Anderson to Riviera, the parties used a practice called in the trade "jumping title," by which the title was transferred directly from Haugland to Riviera, bypassing Anderson entirely. The automobile actually was a 1960 model.

Plaintiff sold the car to Leonard Strickler as a 1960 model. It was later repossessed by plaintiff. After plaintiff had repossessed the car from Strickler, it received a title card from the secretary of state showing that the car was registered as a 1959 model. It later sold the car to one James W. Turek on December 16, 1960, as a 1959 model. After a series of letters between the secretary of state and the manufacturer of the car, the secretary of state was convinced that the car actually

was a 1960 model, although manufactured in 1959, and on December 30, 1960, wrote a letter which reads as follows:

"To Whom It May Concern:

"On August 21, 1959, one R. P. Haugland, Appleton, Minnesota, registered an Austin Healy 3000 Series 4 Seater Roadster with serial number HBT7LO2668 and listed it on his application for registration as being a 1959 model.

"A letter received on July 10, 1959 from the Hambro Automotive Corporation, manufacturers of the Austin Healy automobile, informed us that they were introducing their 1960 models effective June 30, 1959, and that the starting serial number prefix for the 4 Seater model would be BT7.

"It appears, therefore, that the initial registrant of the car in Minnesota listed the year model of the car described in the first paragraph incorrectly and if the current owner of the automobile will submit the Minnesota registration certificate to the Motor Vehicle Department of the Secretary of State's office for correction, we will make the necessary corrections on our records and issue a new Minnesota registration certificate which will describe the automobile to be a 1960 model."

By the time it learned of this letter, plaintiff had sold the car as a 1959 model. The automobile is a foreign make, and it is conceded that the outside appearance of the 1959 and 1960 models is so similar that the year model of the car could not be determined from an external observation. All parties agree that the year model of this type of car is determined from the registration card and that a 1960 automobile could not be sold as such if it was registered as a 1959 model. It is also conceded that a 1960 model would have been worth more than a 1959 model. One of the officers of plaintiff testified that when he finally received the card from the secretary of state he was led to believe that it was a 1959 model and sold it as such; he also testified that he was unable to have the card altered so as to show that it was a 1960 model.

Plaintiff commenced this action to recover damages for a breach of warranty. It contends that defendants warranted the car to be registered as a 1960 model, when in fact it was registered as a 1959 model. The trial court found in favor of plaintiff, apparently resting its de-

cision on a breach of an implied warranty under Minn. St. 512.15. This statute, as far as material here, reads:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1)  Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

\*   \*   \*   \*   \*

"(5)  An implied warranty or condition as to quality or fitness for a particular purpose may be annexed by the usage of trade."

The main difficulty in this case lies in the fact that plaintiff actually received the car it bargained for. The question is whether a breach of an implied warranty under our sales act can be based on a faulty registration card when the car itself actually was the year plaintiff purchased.

■ At the outset, there are some procedural questions raised by defendants that should be disposed of. Defendants claim that the complaint is based on a breach of an express warranty rather than an implied warranty and that the court erred in basing its decision on a breach of an implied warranty. The complaint alleges, among other things:

"That at said time and place the defendants warranted and represented to the plaintiff that said automobile was a 1960 model automobile and was so registered by the manufacturer; that in reliance thereon, plaintiff purchased said automobile for the sum of $2,500.00; that said warranties and representations were false and untrue and were known by the defendants to be false and untrue and were made with the intent to deceive and defraud plaintiff."

The essential finding of the trial court is:

"That at said time and place defendants warranted and represented

to the plaintiff that said automobile was registered in the State of Minnesota as a 1960 model automobile; and that the registered title issued by the Motor Vehicle Division of the office of the Secretary of State for the State of Minnesota would show that said automobile was a 1960 model; that the plaintiff relied upon said warranty and representation, and believing the same to be true, did purchase from said defendants said automobile; and did pay to said defendants the sum of $2,500.00."

Under a general allegation that the seller warranted the goods, either an express or implied warranty may be proved.[1]

Even under an allegation of an express warranty, any warranty implied by the sales act not inconsistent with the express warranty may be established.[2]

Where, as here, a party alleges a breach of warranty, coupled with an allegation that it was fraudulently made, and fails to prove the fraud but establishes a breach of warranty, he may recover.[3]

In this case, there is a general allegation of a breach of warranty. Under such pleading, proof of a breach of an implied warranty is permissible.[4]

The court found that the difference in value between an automobile registered as a 1960 model and one registered as a 1959 model would be the sum of $500 and ordered judgment for plaintiff in that amount. In its memorandum to the order denying a new trial, the court said:

---

[1] 1 Pirsig, Minn. Pleading (4 ed.) § 1026; Segerstrom v. Swenson, 105 Minn. 115, 117 N. W. 478.

[2] Kitowski v. Thompson Yards, Inc. 150 Minn. 436, 185 N. W. 504; see, also, Jordan v. Van Duzee, 139 Minn. 103, 165 N. W. 877, L. R. A. 1918B, 1136.

In Reliance Engineers Co. v. Flaherty, 211 Minn. 233, 300 N. W. 603, we held it was error to submit implied warranty to the jury when only express warranty was pleaded. However, the basis of that holding is not clear and applies more to the inaccuracy in the language used in the instruction than to the rule itself. The syllabus of the opinion would so indicate.

[3] Brown v. Doyle, 69 Minn. 543, 72 N. W. 814; Wilson v. Fuller, 58 Minn. 149, 59 N. W. 988.

[4] See, 1 Pirsig, Minn. Pleading (4 ed.) § 1052.

"In my opinion, there was an implied warranty by the seller under M. S. A. 512.15(5) of quality or fitness for a particular purpose, namely, resale.

"Implied warranty arises outside of contract and is imposed by operation of law."

There is no evidence in the record to sustain a finding of a breach of an express warranty.

■ An implied warranty is a creature of the law and not part of the contractual agreements of the parties.[5]

■ Where the buyer informs the seller of the purpose for which an article is to be used, there is an implied warranty of fitness for that use.[6]

The seller may be informed of the intended use by the buyer by implication.[7]

■ Defendants argue that the usual rule does not apply in this case because plaintiff, as well as defendants, was a dealer in automobiles and did not rely on the seller's judgment. In Rappaport v. Boyer & Gilfillan Motor Co. 239 Minn. 477, 480, 59 N. W. (2d) 302, 305, we said:

"* * * although a buyer has the opportunity and skill to pass judgment upon goods, he may be induced not to do so by positive statements of the seller."

The general rule is stated in 77 C. J. S., Sales, § 325, p. 1179, as follows:

"There has been held to be an implied warranty that the goods are reasonably fit for the contemplated purpose even though the buyer is

---

[5]Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164; Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670.

[6]Bekkevold v. Potts, *supra*; Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685; E. Edelman & Co. v. Queen Stove Works, Inc. 205 Minn. 7, 284 N. W. 838; McPeak v. Boker, 236 Minn. 420, 53 N. W. (2d) 130; Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179.

[7]17 Dunnell, Dig. (3 ed.) § 8576.

a dealer who purchases the goods for resale to others for the contemplated use."[8]

■ On the subject of implied warranty by customary usage, the rule is stated in 77 C. J. S., Sales, § 325, p. 1179, as follows:

"* * * a contract of sale, whether verbal or written, may carry an implied warranty by the seller to the effect that the merchandise sold is fit for some special use where such special use is lawful and has been established by a general habit or custom of the using public."[9]

3 Williston, Sales (Rev. ed.) § 618, contains this statement:

"* * * Particular usages and customs of trade or business must be known by the party to be affected by them, or they will not be binding, unless they are so notorious, universal, and well established, that his knowledge of them will be conclusively presumed."

■ In this case, the evidence would sustain a finding that an automobile of this type customarily was sold in the trade and its value determined by the year model shown on the registration card. Where the seller knows that the buyer intends to resell an article and further knows that the resale value depends on the year model of a car as shown by the registration card and that it cannot be sold on the general market as any other year model, it is only fair to hold that the seller impliedly warrants that the registration card correctly reflects the true year model of the car. On that theory, the evidence sufficiently supports the court's finding that there was a breach of an implied warranty.

Affirmed.

---

[8]See, also, Juvland v. Wood Brothers Thresher Co. 212 Minn. 310, 3 N. W. (2d) 772; Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179.

[9]See, Pine-Brownell Co. v. Coleman, 63 Ohio App. 259, 26 N. E. (2d) 216; North American Fertilizer Co. v. Combs, 307 Ky. 869, 212 S. W. (2d) 526.