**Esmeralda SORCHAGA, Respondent,**

v.

**RIDE AUTO, LLC, et al., Appellants.**

**A16-0855**

Court of Appeals of Minnesota.

Filed 03/20/2017

Todd Murray, Friedman Iverson, Minneapolis, Minnesota (for respondent).

Robert J. Bruno, Robert J. Bruno, Ltd., Burnsville, Minnesota (for appellants).

Edward Kautzer, Ruvelson & Kautzer, Ltd., St. Paul, Minnesota (for amicus curiae Northland Independent Auto Dealers Association).

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

## OPINION

SMITH, TRACY M., Judge

This tort and contract case arises out of appellant Esmeralda Sorchaga's purchase of a 2008 Ford F-350 pickup truck from respondent Ride Auto, L.L.C., a used-car dealership. Respondent Western Surety Company is the bond-surety holder for Ride Auto. Sorchaga brought claims of fraud and breach of implied warranty of merchantability, as well as a claim for attorney fees under the Magnuson-Moss Warranty Act (MMWA), against Ride Auto and Western Surety. Following a bench trial, the district court awarded Sorchaga $14,366.03 in damages and $21,949.35 in attorney fees, and ordered Sorchaga to provide Ride Auto with an opportunity to retrieve the truck.

On appeal, Ride Auto and Western Surety argue that (1) the judgment is void

because Sorchaga failed to file her amended complaint with the district court; (2) the district court erred in denying Ride Auto's motions for summary judgment; (3) the district court erred in denying Ride Auto's motion for judgment as a matter of law; (4) the district court clearly erred in finding that sufficient evidence supported Sorchaga's fraud claim; (5) the district court erred in concluding that Ride Auto's disclaimer of the implied warranty of merchantability was ineffective; (6) the district court erred in awarding attorney fees under the MMWA; (7) the district court erred in ordering judgment in favor of Sorchaga on both her fraud and breach-of-warranty claims; and (8) the district court's judgment with respect to Western Surety is unsupported as a matter of law. We conclude that the district court did not err with respect to any of these issues and, therefore, affirm.

## FACTS

In March 2014, Ride Auto purchased a 2008 Ford F-350 pickup truck from Metro Salvage Yard for $6,770. The original owner had sold the truck to the salvage company because the engine needed repairs. The original owner had taken the truck to a Ford dealer, who diagnosed the truck as having a "blown" motor, causing the truck to lack power and to smoke from the tailpipe. By the time the original owner sold the truck to the salvage yard, the check-engine light had turned on and the truck could no longer start or be driven. Ride Auto had the truck delivered to it on a flatbed truck, had body and cosmetic repairs completed, and ensured that the truck would start and drive short distances.

Sorchaga and her husband went to Ride Auto on May 20, 2014, to look at trucks for her husband's roofing business. They spoke with Jordy Perez, who was acting as Ride Auto's salesperson, about the truck. The Sorchagas returned to Ride Auto on May 21 and test drove the truck with Perez. During the test drive, the truck smoked from the tailpipe and the check-engine light was illuminated. Sorchaga asked about the check-engine light. Perez told Sorchaga that the truck had a faulty oxygen sensor but represented that the oxygen sensor would be easy to fix and that the truck would last a long time after it was fixed. He also explained that the smoke was a result of the truck being a diesel that smokes when it warms up. Perez also indicated that the truck could be driven with the check-engine light on and, if purchased, could be brought back to Ride Auto to be fixed after a couple of days. After the test drive, Sorchaga asked whether Ride Auto could place the truck on a scanner to determine the cause of the check-engine light. Arash Shakibi, an owner of Ride Auto, informed Sorchaga that Ride Auto's mechanic was uncertified and could not perform the inspection. Perez again told Sorchaga that the check-engine light was caused by a faulty oxygen sensor, and Shakibi did not correct that statement. Ride Auto provided Sorchaga with an ASC Vehicle Protection Plan (ASC agreement) at no cost, and Shakibi told Sorchaga that the ASC agreement would allow her to have the truck inspected and repaired for free.

Sorchaga worked with Perez and Shakibi to purchase the truck for $12,950.68. Sorchaga signed a purchase agreement, which stated that the truck had a salvage title and that the check-engine light was on. The purchase agreement also provided a disclaimer of express and implied warranties:

Dealer's disclaimer of warranty and pollution system. "AS IS, NO WARRANTY." You will pay all costs for any repairs. The Seller assumes no responsibility for any repairs regardless of

any oral statements about above name[d] vehicle.... As between retail seller and buyer the above name[d] vehicle is to be sold "AS IS" and the entire risk as to the quality and performance of the above name[d] vehicle is with the buyer. The Seller expressly disclaims all warranties either expressed or implied. The buyer acknowledges being informed of this statement prior to the sale.

Sorchaga signed a separate document, which stated that the truck had a salvage title and that Sorchaga was "receiving a discounted price because of the prior bodywork." Sorchaga also signed a buyer's guide, which stated that the truck was sold "AS IS—NO WARRANTY" and listed "some major defects that may occur in used motor vehicles."

Sorchaga also signed the ASC agreement, which listed Perez as the salesperson. Because the truck had a salvage title, the ASC agreement would cover a maximum of $500 in repair expenses. Sorchaga also signed a document that stated: "I understand that I am purchasing this vehicle from Ride Auto Co. 'AS IS' and the service contract that I have is through a third party...."

Sorchaga's husband drove the truck to and from work, but the truck lacked power and continued to smoke. Sorchaga sought assistance from Ride Auto within days of purchase, but Ride Auto refused to diagnose or repair the truck. Eight days after purchase, Sorchaga had the truck towed to Inver Grove Ford and inspected for $1,415.35. Inver Grove Ford concluded that the truck should not be driven and recommended a full engine replacement, which would cost Sorchaga approximately $20,000.

Sorchaga served Ride Auto with a complaint, alleging that Ride Auto (1) had breached the implied warranty of merchantability, (2) violated the MMWA, and (3) committed fraud. Before Ride Auto filed its first answer, Sorchaga amended the complaint to include Western Surety. Prior to discovery, Ride Auto and Western Surety moved for summary judgment, arguing that all three counts failed as a matter of law and that Sorchaga had failed to plead fraud with particularity as required by Minn. R. Civ. P. 9.02. The district court denied this motion. After discovery, Ride Auto and Western Surety again moved for summary judgment. The district court also denied this motion. The district court held a two-day bench trial. During trial, after Sorchaga rested her case, Ride Auto and Western Surety moved for judgment as a matter of law, a motion the district court also denied.

The district court ordered judgment for Sorchaga on all three counts. The district court found that the warranty disclaimer of the purchase agreement was ineffective and concluded that Ride Auto had breached the implied warranty of merchantability. Because it concluded that Ride Auto breached the implied warranty of merchantability, the district court concluded that Sorchaga was entitled to attorney fees under the MMWA. The district court also concluded that Ride Auto committed fraud because Ride Auto had misrepresented the condition of the truck to Sorchaga. The district court ordered Western Surety, as bond-surety holder for Ride Auto, to share liability with Ride Auto. The district court awarded Sorchaga $14,366.03 in damages and $21,949.35 in attorney fees and litigation expenses. The district court also ordered Sorchaga to provide Ride Auto with the opportunity to retrieve the truck.

Ride Auto appeals.

## ISSUES

I. Is the judgment void because Sorchaga failed to file her amended complaint with the district court?

II. Did the district court err in denying Ride Auto's summary-judgment motions?

III. Did the district court err in denying Ride Auto's motion for judgment as a matter of law?

IV. Did the district court clearly err in finding that sufficient evidence supported Sorchaga's fraud claim?

V. Did the district court err in concluding that Ride Auto's disclaimer of the implied warranty of merchantability was ineffective?

VI. Did the district court err in awarding attorney fees under the Magnuson-Moss Warranty Act?

VII. Did the district court err in ordering judgment in favor of Sorchaga on both her fraud and breach-of-warranty claims?

VIII. Did the district court clearly err in ordering judgment against Western Surety?

## ANALYSIS

### I. Ride Auto forfeited its argument that the judgment is void.

■ Ride Auto argues that the judgment is "void" because Sorchaga never filed her amended complaint with the district court as Ride Auto asserts is required by Minn. R. Civ. P. 5.04(b).[1] Ride Auto admits that it did not raise this issue before the district court. We therefore need not consider this issue. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Nevertheless, Ride Auto urges that review is necessary in the "interest of justice," Minn. R. Civ. App. P. 103.04, because Sorchaga's

failure to file the amended complaint deprived Ride Auto of due process.

■ The interest of justice does not necessitate our review of this issue. A judgment is void for lack of due process "only where the circumstances surrounding the trial are such as to make it a sham and a pretense rather than a real judicial proceeding." *State v. Waldron*, 273 Minn. 57, 66-67, 139 N.W.2d 785, 792 (1966) (quotation omitted). Sorchaga served the amended complaint on Ride Auto, and Ride Auto answered the original complaint and filed an amended answer and a second amended answer to the amended complaint. The court conducted a trial on the merits, in which Ride Auto fully participated, with full knowledge of the allegations against it. Nothing in the record indicates that the proceedings were a "sham." *Id.* Because Ride Auto forfeited this issue, we do not consider whether the judgment is void.

### II. The district court's denials of Ride Auto's summary-judgment motions are not within our scope of review.

■ Ride Auto argues that the district court erred in denying its two pretrial summary-judgment motions. Sorchaga responds that these pretrial motions are not within our scope of review because the district court issued a judgment following a trial on the merits.

In *Bahr v. Boise Cascade Corp.*, the Minnesota Supreme Court held that the denial of a motion for summary judgment is not within an appellate court's scope of review after "a trial has been held and the parties have been given a full and fair opportunity to litigate their claims." 766

---

1. Ride Auto also argues that the judgment is void because it reads Minn. R. Civ. P. 5.04(a) to require the *complaint* to be filed within one year after the action is commenced. We dismissed this argument in a June 29, 2016 order. Minn. R. Civ. P. 5.04(a) requires the filing of the *action* within one year of commencement. Ride Auto's filing of the amended answer satisfied the requirements of Minn. R. Civ. P. 5.04(a).

N.W.2d 910, 918 (Minn. 2009) (quotation omitted). The court held that appellate courts have authority to review orders that "affect" the judgment being appealed under Minn. R. Civ. App. P. 103.04, but concluded that a denial of a motion for summary judgment cannot be characterized as "affecting the judgment." *Bahr*, 766 N.W.2d at 918.

Nevertheless, Ride Auto argues that we may review the denial of summary judgment if the district court's decision was "based on purely legal grounds," *City of N. Oaks v. Sarpal*, 784 N.W.2d 857, 861 (Minn. App. 2010), *rev'd* 797 N.W.2d 18 (Minn. 2011), and asserts that whether "the record reflects a complete lack of proof on an essential element of the plaintiff's claim" is a question of law, *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). In dismissing both of Ride Auto's motions for summary judgment, the district court concluded that genuine issues of material fact remained with respect to all three claims. Even if Sorchaga failed to provide proof of an essential element on summary judgment, the trial on the merits rendered Ride Auto's argument moot because the district court concluded that Sorchaga satisfied every element of all three claims. As in *Bahr*, it would make no sense to reverse the district court's judgment "where the trial evidence was sufficient merely because at summary judgment it was not." *Bahr*, 766 N.W.2d at 918.

Ride Auto also argues that we may review the district court's refusal, in the first summary-judgment motion, to dismiss Sorchaga's amended complaint for failure to plead "the circumstances constituting fraud" with "particularity" as required by Minn. R. Civ. P. 9.02. While the sufficiency of a complaint is a legal question, the district court's order denying dismissal of the claim for failure to plead fraud with particularity is nevertheless outside the scope of appellate review. The order is not unlike an order denying a motion to dismiss for failure to state a claim: neither affects the judgment in the case. *See* Minn. R. Civ. App. P. 103.04; *Indep. Sch. Dist. No. 84 v. Rittmiller*, 235 Minn. 556, 557, 51 N.W.2d 664, 664 (1952) (observing that denial of a motion to dismiss for failure to state a claim "does nothing more than retain the action for trial").

Ride Auto's citation to *Westgor v. Grimm*, 318 N.W.2d 56 (Minn. 1982), does not change this conclusion. In *Westgor*, the Minnesota Supreme Court affirmed a district court's dismissal of a fraud claim at the close of the plaintiff's case in chief, stating, "The record cannot sustain an action in fraud because Westgor did not state his claim with particularity" and citing Minn. R. Civ. P. 9.02. *Id.* at 58. But the court in *Westgor* did not evaluate the sufficiency of the fraud allegations in the complaint, nor did it explicitly state that an order denying dismissal of a complaint alleging fraud is reviewable after a trial and a judgment on the merits. In its more recent *Bahr* decision, the supreme court noted, "To the extent our prior decisions either stated or implied that it was appropriate for the appellate court to review the denial of summary judgment in circumstances such as are presented here, they are overruled." *Bahr*, 766 N.W.2d at 919 (citation omitted). Following *Bahr*, we conclude that the district court's order addressing whether Sorchaga pleaded fraud with sufficient particularity under Minn. R. Civ. P. 9.02 does not "affect" the judgment, Minn. R. Civ. App. P. 103.04, and that Ride Auto's arguments regarding the sufficiency of the complaint are rendered moot by the district court's judgment on the merits. *See Bahr*, 766 N.W.2d at 918. We therefore conclude that the denials of Ride Auto's

summary-judgment motions are not within our scope of review.

### III. The district court's denial of Ride Auto's motion for judgment as a matter of law is not within our scope of review.

█ Ride Auto orally raised "another motion for judgment as a matter of law" at the close of Sorchaga's case. The district court considered and denied this motion. On appeal, Ride Auto argues that the district court erred in denying this motion.

Ride Auto does not cite to the rule permitting its motion for judgment as a matter of law. Rule 50 motions for judgment as a matter of law apply in jury-trial settings. Minn. R. Civ. P. 50.01(a). The trial in this case was a bench trial, and therefore a rule 50 motion was inappropriate. To the extent that Ride Auto's motion may be understood as a renewed motion for summary judgment, we need not consider its denial on appeal from a judgment on the merits. *See Bahr*, 766 N.W.2d at 918. We therefore conclude that the denial of Ride Auto's motion for judgment as a matter of law is not within our scope of review.

### IV. Sufficient evidence supports the district court's findings of fact and conclusions of law with respect to Sorchaga's fraud claim.

█ Ride Auto argues that the district court's findings of fact with respect to fraud are clearly erroneous because the evidence is insufficient to establish all of the elements of fraud. The district court found that Ride Auto made three relevant misrepresentations: (1) that the truck was in working condition and the check-engine light was merely an oxygen-sensor problem, (2) that the truck came with an implied warranty between Ride Auto and Sorchaga, and (3) that the ASC agreement would cover any repairs needed on the truck. Appellate courts review district courts' findings of fact for clear error and will reverse a district court's findings only if "left with the definite and firm conviction that a mistake has been made." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted). We leave the task of weighing conflicting evidence to the district court. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). We defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

█ To succeed on a fraud claim, the plaintiff must prove five elements:

> (1) a false representation [by the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the other party] to act in reliance thereon; (4) that the representation caused [the other party] to act in reliance thereon; and (5) that [the other party] suffered pecuniary damages as a result of the reliance.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). A misrepresentation of a future act or event is generally insufficient to sustain a charge of fraud. *Berryman v. Riegert*, 286 Minn. 270, 276, 175 N.W.2d 438, 442 (1970). While a party to a transaction generally has no duty to disclose material facts to the other, "[o]ne who speaks must say enough to prevent his words from misleading the other party." *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). The plaintiff must have justifiably relied on the misrepresentation. *Carpenter v. Vreeman*, 409 N.W.2d 258, 261 (Minn. App. 1987).

We begin with the sufficiency of the evidence for the district court's finding of

fraud based on Ride Auto's misrepresentation regarding the condition of the truck.

### *Knowing misrepresentation of material fact*

Ride Auto challenges the district court's finding that "the employees of Ride Auto made misrepresentations and false representations to [Sorchaga] with respect to the condition, value, quality or fitness of the truck for any purpose for which a truck is purchased." The district court found that "the truck as sold was not in drivable condition and [was] in need of an entirely new engine" and that Ride Auto "made knowingly false representations to [Sorchaga] about the issues with the truck."

Ride Auto claims that the district court's finding that Ride Auto orally misrepresented the condition of the truck is contradicted by evidence that Inver Grove Ford's invoice does not mention that Sorchaga believed the check-engine light was caused by the oxygen sensor. Ride Auto argues that because Inver Grove Ford's invoice does not mention the oxygen sensor, Ride Auto must never have told Sorchaga that the oxygen sensor was the problem. Ultimately, this is a question of assessing credibility and weighing conflicting evidence, which are tasks for the district court. *See Fletcher*, 589 N.W.2d at 101; *Sefkow*, 427 N.W.2d at 210. Sorchaga and her husband both testified that Perez told them that the check-engine light was illuminated because the truck had a faulty oxygen sensor, but that the truck could be driven with a faulty oxygen sensor. Sorchaga testified that she believed the faulty oxygen sensor was a "minor problem," because Perez told her "it was no big problem, it's easy to fix." In contrast, Perez testified that Sorchaga did not ask about the check-engine light and that he did not tell the Sorchagas about the oxygen sensor. The district court implicitly found Perez's testimony not credible. Sufficient evidence supports the district court's finding that Ride Auto misrepresented the condition of the truck to Sorchaga. *See Valspar Refinish*, 764 N.W.2d at 368 (requiring that the wrongful party make "a false representation ... of a past or existing material fact susceptible of knowledge").

Ride Auto argues that the record contains insufficient evidence to establish that it knew the cause of the check-engine light at the time of sale and that Sorchaga submitted no evidence establishing that the oxygen sensor did not cause the check-engine light. The truck's original owner testified that the engine was "blown" and the truck was not drivable when he sold it. The Metro Salvage Yard auction listing stated that the truck had "motor damage," and Shakibi testified that he had seen this listing. Shakibi also testified that he knew that the check-engine light was illuminated, the truck smoked from the tailpipe, and the truck lacked power, but Ride Auto did not complete any mechanical repairs on the truck. Inver Grove Ford's repair invoice recommended installation of a new engine. Sufficient evidence established that Ride Auto knew the truck required substantial engine repairs beyond replacing a faulty oxygen sensor. Nevertheless, Ride Auto and its employees affirmatively represented to Sorchaga that the oxygen sensor was the cause of the check-engine light. Ride Auto misled Sorchaga when it failed to disclose the known engine problems with the truck. *See Klein*, 293 Minn. at 421, 196 N.W.2d at 622. Sufficient evidence supports the district court's finding that Ride Auto knew the falsity of its misrepresentation that the check-engine light was illuminated because of a faulty oxygen sensor. *See Valspar Refinish*, 764 N.W.2d at 368 (requiring that the misrepresentation be "made with knowledge of the falsity of the representation or made

without knowing whether it was true or false"). Thus, the record supports the district court's findings and conclusion that the first two elements of fraud are satisfied.

### Intent to induce

The district court properly inferred Ride Auto's intent to induce Sorchaga to purchase the truck. "[A] representation is made with fraudulent intent when it is known to be false or, in the alternative, when it is asserted as of the representer's own knowledge when he or she does not in fact know whether it is true or false." *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986). Because Ride Auto knew its representation about the truck was false and it made that representation in the context of selling the truck, sufficient evidence supports the district court's finding that Ride Auto misrepresented the condition of the truck with the intention of inducing Sorchaga to purchase the truck. *See Valspar Refinish*, 764 N.W.2d at 368 (requiring that the misrepresentation be made "with the intention to induce [the other party] to act in reliance thereon"). The record supports the district court's finding and conclusion that the third element of fraud is satisfied.

### Reasonable reliance

Ride Auto argues that the warranty disclaimer precluded the district court from finding that Sorchaga reasonably relied on Ride Auto's misrepresentation about the condition of the truck. The Minnesota Supreme Court has held that "[a] party who makes fraudulent representations to induce another to make a contract cannot escape liability for his fraud by incorporating a disclaimer of fraud in the contract." *Nat'l Equip. Corp. v. Volden*, 190 Minn. 596, 600, 252 N.W. 444, 445 (1934); *see also Danley v. Murphy*, 658 So.2d 483, 486 (Ala. Civ. App. 1994) (con-

cluding that an as-is clause did not preclude a fraud claim where the car dealer misrepresented the damage done to the vehicle). We therefore disagree with Ride Auto that the disclaimer precluded a finding of reliance. Sorchaga testified that she would not have purchased the truck if she had known of the engine damage. Sufficient evidence supports the district court's finding that Sorchaga reasonably relied on Ride Auto's misrepresentation, satisfying the fourth element of fraud. *See Valspar Refinish*, 764 N.W.2d at 368 (requiring "that the representation caused [the other party] to act in reliance thereon").

### Damages

Finally, Ride Auto argues that the district court's finding of damages was unsupported by the evidence. The district court found that "the needed repairs render the vehicle valueless" and found damages of $14,366.03, representing the purchase price of the truck plus the cost of inspection by Inver Grove Ford.

The value of the goods received and the amount of damages the plaintiff is entitled to recover are questions of fact. *See Vilett v. Moler*, 82 Minn. 12, 16, 84 N.W. 452, 453-54 (1900). Damages for fraud are calculated using the "out-of-pocket" rule, which is usually the difference between what the plaintiff parted with and what she received. *Watkins v. Lorenz*, 264 Minn. 471, 478-79, 119 N.W.2d 482, 487 (1963). "It is therefore not a question of what the plaintiff might have gained through the transaction but what he lost, by reason of defendant's deception." *Id.* (quotation omitted). The district court "need not adopt the exact figures of any witness in determining ... damages ... and as long as its finding is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a

whole, such finding must be sustained." *Carroll v. Pratt*, 247 Minn. 198, 202, 76 N.W.2d 693, 697 (1956).

Ride Auto argues that the district court disregarded evidence about the actual value of the truck. Ride Auto claims, "Sorchaga admitted that at the time of purchase she knew she was buying a $26,000 vehicle for $11,935." On cross-examination, Sorchaga did agree with Ride Auto's counsel that she was "buying a $26,000 vehicle for ... $11,935" and that this deal amounted to a $15,000 discount. Ride Auto thus claims that the actual value of the truck is $21,125, which amounts to the $26,125 book value less $5,000 in costs for repairing the truck's rocker arms and upholstery, repairs that Ride Auto argues were appropriate. Other evidence, however, shows that the $26,125 book value represents the value of the truck if in "clean retail" condition. The Inver Grove Ford repair invoice sufficiently establishes that the truck here was not in "clean retail" condition. Reconciling conflicting evidence is a task for the district court, *Fletcher*, 589 N.W.2d at 101, and nothing in the record suggests that the district court improperly rejected Ride Auto's alleged value of the truck.

Ride Auto also argues that the district court clearly erred in finding that the truck was "valueless" because the engine may have been repaired by replacing the rocker arms, which would have cost only $4,000 to $5,000. Inver Grove Ford's employee, who testified on behalf of Sorchaga, claimed that the truck was not drivable and that, because of the internal engine damage, age, and high mileage of the truck, a complete engine replacement was recommended. He further testified that Inver Grove Ford "couldn't guarantee that the engine would have been fixed by just [replacing the rocker arms]." Even Shakibi testified that there "was no value" in re-

pairing the truck because the truck has "got 218,000 miles, it's going to have a salvage title, and ... I didn't see the value that I had to put the money into it to get it fixed." Sufficient evidence supports the district court's implicit finding that replacement of the rocker arms would have been insufficient to repair the truck, and that the costs of replacing the engine would have exceeded what Sorchaga paid for the truck.

■ Finally, Ride Auto asserts that the district court erred in using a figure for "installing the equivalent of a factory-new engine with zero miles on it and a three year unlimited miles warranty." Instead, Ride Auto claims that evidence should have been offered regarding the cost of "a used six-year-old 218,000 mile engine in a good state of repair." Ride Auto, however, did not offer any such evidence. It is not necessary to prove "the exact amount of loss to a certainty," but the plaintiff must establish "the quantum of his loss by evidence from which the court or jury will be able to estimate its extent." *Hubbard Specialty Mfg. Co. v. Minneapolis Wood Designing Co.*, 47 Minn. 393, 395, 50 N.W. 349, 350 (1891). Sorchaga met her burden by providing the district court with evidence of the cost of a new engine. If Ride Auto wished to present evidence regarding the cost of replacing the engine with a more comparable engine, it should have done so.

The district court did not clearly err in finding that the truck was valueless, establishing damages in the amount of the full purchase price of the truck under the out-of-pocket rule. *See Watkins*, 264 Minn. at 478-79, 119 N.W.2d at 487. Therefore, sufficient evidence in the record supports district court's findings of fact and conclusion of law with respect to this fifth element of fraud. *See Valspar Refinish*, 764 N.W.2d at 368.

Because we conclude that sufficient evidence supports the district court's findings of fact and conclusions of law that Ride Auto engaged in fraud by misrepresenting the condition of the truck, we need not consider whether the record also contains sufficient evidence to sustain the district court findings that Ride Auto engaged in fraud by mispresenting the existence of an implied warranty and the terms of the ASC agreement. *See Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 888 (Minn. 2010) ("[I]f the plaintiff is entitled to recover on one ground, a court need not consider the other grounds.").

## V. The district court's finding of breach of implied warranty was not erroneous.

The district court found that Ride Auto breached the implied warranty of merchantability contained in Minn. Stat. § 336.2-314 (2016). Ride Auto argues that (1) the district court erred as a matter of law in concluding that fraud was a "circumstance" rendering the "as-is" disclaimer ineffective and (2) Sorchaga waived the implied warranty of merchantability by inspecting the truck.

### A. The "as-is" warranty disclaimer was rendered ineffective by Ride Auto's fraud.

Ride Auto first argues that the district court erred as a matter of law in concluding that fraud defeated the "as-is" disclaimer. The district court rejected Ride Auto's argument that the "as-is" disclaimer excluded the implied warranty, finding "[t]here was no waiver or exclusion of the warranty, despite the vehicle being sold 'as is' due to the fact that the defendant,

through its employees, falsely misrepresented the fact that the vehicle was operational and was only suffering from minor mechanical issues." Whether a merchant's fraudulent misrepresentation about the condition of goods to a consumer precludes the merchant from disclaiming the implied warranty of merchantability is an issue of first impression and a question of statutory interpretation that we review de novo. *Lee v. Lee,* 775 N.W.2d 631, 637 (Minn. 2009).[2]

Chapter 336 of the Minnesota Statutes houses Minnesota's codification of the Uniform Commercial Code (UCC). Minn. Stat. § 336.1-101(a) (2016). Under Minn. Stat. § 336.2-314, a contract for a sale of goods contains an implied warranty of merchantability, unless the parties exclude or modify the implied warranty pursuant to Minn. Stat. § 336.2-316 (2016). Parties may exclude the implied warranty of merchantability if the disclaimer is conspicuous and in writing. *Id.,* § 336.2-316(2). "[U]nless *the circumstances indicate otherwise,* all implied warranties are excluded by expressions like 'as is'...." *Id.,* § 336.2-316(3)(a) (emphasis added). The issue here is whether fraud is a "circumstance" that prevents exclusion of the implied warranty of merchantability.

First, we ask whether the plain language of Minn. Stat. § 336.2-316(3)(a) is clear and free from ambiguity. *Rice v. City of St. Paul,* 208 Minn. 509, 509, 295 N.W. 529, 529 (1940); *see also* Minn. Stat. § 645.16 (2016). A statute is ambiguous if its plain language is susceptible to more than one reasonable interpretation. *State v. Carufel,* 783 N.W.2d 539, 542 (Minn. 2010). The plain language of

---

**2.** Ride Auto also argues that there was no warranty under the ASC agreement because Ride Auto did not enter into a "service contract" with Sorchaga under the applicable law. In her amended complaint, Sorchaga alleged that Ride Auto entered into a service contract with her. The district court, however, made no findings or conclusions related to this theory of liability, and we therefore do not address it.

Minn. Stat. § 336.2-316(3)(a) provides no context for when "circumstances" may indicate that an implied warranty was not excluded by a warranty disclaimer. Ride Auto argues for a limited set of "circumstances"—not including fraud—that would render the disclaimer ineffective. Ride Auto relies on discussion in an Ohio appellate court decision—not involving fraud—which identifies three specific circumstances under which a warranty disclaimer is ineffective. *See Nick Mikalacki Constr. Co. v. M.J.L. Truck Sales, Inc.*, 33 Ohio App.3d 228,515 N.E.2d 24, 26 (1986).[3] Sorchaga, on the other hand, reads the statute as permitting a court to invalidate an "as is" warranty disclaimer when the "circumstances" include fraudulent representation. Sorchaga cites to an Oklahoma appellate decision holding that among the circumstances rendering an "as-is" disclaimer ineffective is when the merchant makes "fraudulent representations or misrepresentations concerning the condition, value, quality, characteristics or fitness of the goods sold that are relied upon by the Buyer to the Buyer's detriment." *See Murray v. D & J Motor Co.*, 958 P.2d 823, 830 (Okla. Civ. App. 1998). Both parties cite caselaw presenting different reasonable interpretations of this provision of the UCC. We conclude that Minn. Stat. § 336.2-316(3)(a) is ambiguous.

 In construing an ambiguous statute, we seek to ascertain the intent of the legislature. *Graybar Elec. Co. v. St. Paul Mercury Indem. Co. of St. Paul*, 208 Minn. 478, 478, 294 N.W. 654, 654 (1940); Minn. Stat. § 645.16. We interpret the statute as a whole. *Knudson v. Anderson*, 199 Minn. 479, 479, 272 N.W. 376, 376

(1937). We may also look to extrinsic aids to determine legislative intent. *Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul*, 240 Minn. 434, 437, 61 N.W.2d 533, 536 (1953). Because the UCC is a uniform law, we interpret it in light of the interpretations of other states that have adopted it. *See Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn. 2002) (referring to the Uniform Child Custody Jurisdiction Act); *see also* Minn. Stat. § 336.1-103(a)(3) (2016). We may examine the comments of the drafters of the UCC when interpreting an ambiguous provision. *Valspar Refinish*, 764 N.W.2d at 366 (examining the comments in interpreting a UCC provision).

The purpose of the warranty provisions of the UCC is "to determine what it is that the seller has in essence agreed to sell." U.C.C. § 2-313 cmt. 4 (Am. Law Inst. & Unif. Law Comm'n 2003). Comment 4 of the UCC asserts that "a contract is normally a contract for a sale of *something describable and described.*" *Id.* (emphasis added). Comment 4 continues:

> A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2-316.
>
> ... [I]n determining what they have agreed upon good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation.

*Id.* The UCC thus discourages merchants from misrepresenting goods by restricting

---

**3.** According to *Nick Mikalacki Constr.*, a warranty disclaimer may be ineffective "when the goods (1) are new rather than used goods, (2) the contract declares the buyer accepts the goods 'in good condition,' (3) and for many years it was both the custom of the trade and

the prior course of dealings between the parties for the seller to repair any mechanical defect." 515 N.E.2d at 26 (quotation omitted). That case does not address whether these circumstances are exclusive under Ohio law.

their ability to shield themselves from liability through a warranty disclaimer.

The purpose of the warranty provisions is consistent with the UCC's general obligation of good faith. "Good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." Minn. Stat. § 336.1-201(b)(20) (2016). Fraud is neither honest nor a reasonable commercial standard of fair dealing.

 We conclude that a warranty disclaimer cannot be given literal effect when the buyer misrepresents the "condition, value, quality, characteristics or fitness of the goods" and the buyer relies on those assertions to her detriment. *Murray*, 958 P.2d at 830. We therefore hold that a merchant's fraudulent misrepresentation about the condition, value, quality, or fitness of the goods for any purpose is a "circumstance" under Minn. Stat. § 336.2-316(3)(a) that may invalidate a warranty disclaimer such as an "as is" disclaimer.

This interpretation is consistent with the Oklahoma Court of Civil Appeals's holding in *Murray*, 958 P.2d at 830. The facts of *Murray* are strikingly similar to those in this case. In *Murray*, the plaintiff noticed a rattling noise while test driving a van. *Id.* at 827. The defendant assured the plaintiff that the engine had been replaced and "there was nothing wrong with it." *Id.* Within one day of purchase, the van broke down, and a mechanic discovered that the van was on the verge of total engine failure. *Id.* at 826. Citing comment 4 of the UCC, the court concluded that "among the circumstances that could render a purported 'as is' or 'with all faults' disclaimer unreasonable and ineffective are fraudulent representations or misrepresentations concerning the condition, value, quality, characteristics or fitness of the goods sold that are relied upon by the Buyer to the Buyer's detriment." *Id.* at 830. "To hold

otherwise would allow a seller to profit from his fraud and to be effectively granted a license to mislead or conceal facts." *Id.* Similarly, in *Blankenship v. Northtown Ford, Inc.*, the Appellate Court of Illinois concluded that "technical compliance with section 2-316" is insufficient to disclaim a warranty where the auto dealer misrepresented a vehicle as a "new car." 95 Ill. App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167, 171 (1981).

Here, Sorchaga asked about the cause of the check-engine light, and Ride Auto fraudulently misrepresented that a faulty oxygen sensor caused the check-engine light. Sorchaga agreed to the warranty disclaimer under the pretense that the faulty oxygen sensor was the cause of the check-engine light. This fraudulent misrepresentation rendered the warranty disclaimer ineffective because sufficient evidence suggests that Sorchaga would not have purchased the truck and agreed to the warranty disclaimer if she knew the truck had severe engine problems.

**B. The implied warranty was not excluded by Sorchaga's inspection of the truck.**

 Ride Auto further argues that the implied warranty was excluded by Sorchaga's inspection of the truck. Minn. Stat. § 336.2-316(3)(b) provides that when a buyer has examined goods before purchase or refused to examine the goods "there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed." Comment 8 of UCC § 2-316 states:

A failure to notice defects which are obvious cannot excuse the buyer. However, an examination under circumstances which do not permit chemical or other testing of the goods would not exclude defects which could be ascertained only by such testing. Nor can latent defects be excluded by a simple

examination.... [A] nonprofessional buyer will be held to have assumed the risk only for such defects as a layman might be expected to observe.

Courts in other jurisdictions have held that an implied warranty of merchantability is not excluded merely because the buyer's test drive of a vehicle failed to reveal hidden engine defects. *See, e.g., Rose v. Epley Motor Sales*, 288 N.C. 53, 215 S.E.2d 573, 578 (1975). Sorchaga asked during the test drive about the check-engine light, and Ride Auto misrepresented the hidden engine defects of the truck as a faulty oxygen sensor. The implied warranty of merchantability was not disclaimed under Minn. Stat. § 336.2-316 because Sorchaga's reasonable inspection could not have revealed the hidden engine defects.

The district court found that Ride Auto fraudulently misrepresented the condition of the truck. Because fraud is a "circumstance" that may render a warranty disclaimer ineffective, and because the implied warranty of merchantability was not excluded by Sorchaga's test drive of the truck, the district court did not err in finding that Ride Auto breached the implied warranty of merchantability.

## VI. The district court did not err in awarding Sorchaga attorney fees under the MMWA.

Ride Auto and amicus curiae Northland Independent Auto Dealers Association (NIADA) challenge the district court's award of attorney fees pursuant to the MMWA, arguing that the truck is not a "consumer product" covered by the MMWA. The district court found that the truck is a consumer product because it is "commonly used for personal, family, or household purposes and the use of the truck in the business did not exclude it from being used by the family."

Under 15 U.S.C. § 2310(d)(1)-(2) (2012), the MMWA permits a district court to award attorney fees and costs to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty, implied warranty, or service contract." The MMWA defines a "consumer" as a buyer "of any consumer product." 15 U.S.C. § 2301(3) (2012). The MMWA defines "consumer product" to mean "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." *Id.*, § 2301(1) (2012). Federal Trade Commission (FTC) regulations clarify that

> a product is a "consumer product" if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.

16 C.F.R. § 700.1(a) (2015). These interpretations are "advisory in nature." 42 Fed. Reg. 36112, 36112 (July 13, 1997). But this court has cited favorably to them in the past, *see, e.g., Zimprich v. Stratford Homes, Inc.*, 453 N.W.2d 557, 560-61 (Minn. App. 1990), and other courts have found them persuasive, *see, e.g., Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010) ("We have looked favorably upon these interpretations in the past."). We thus apply the regulations' interpretation here. Under these regulations, the ordinary use of the product by an ordinary consumer dictates whether a product is a "consumer product."

As a threshold issue, the parties dispute the proper standard of review for a district court's determination of whether a product is a "consumer product" under the MMWA. Sorchaga argues that whether the usage of a product "is not uncommon" is a factual inquiry that we should review for clear error. NIADA argues that the definition of "consumer product" is a question of statutory interpretation that we should review de novo. Other jurisdictions have held that whether an object is a "consumer product" within the meaning of the MMWA is a question of statutory interpretation. *Bennett v. CMH Homes, Inc.*, 770 F.3d 511, 515 (6th Cir. 2014); *Miller*, 600 F.3d at 733-37. But the underlying question of how a product is normally used is a question of fact. *See Crume v. Ford Motor Co.*, 60 Or.App. 224, 653 P.2d 564, 567 (1982). Because the issue of whether the truck is a "consumer product" presents a mixed question of law and fact, "we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *In re Estate of Sullivan*, 868 N.W.2d 750, 754 (Minn. App. 2015) (quotation omitted).

Sufficient evidence in the record supports the district court's finding that ordinary consumers use this type of vehicle for personal, family, or household purposes. The original owner of the truck testified that he used the vehicle for daily use, such as grocery shopping, and to tow a camper and a boat. Ford's marketing images show individuals using the truck to tow horse trailers and boats. Amicus NIADA cites *Crume* for support, but *Crume* concluded that there was no evidence that a *flat-bed truck* was a "consumer product" under the MMWA. 653 P.2d at 567. Here, evidence supported the district court's finding that consumers use the type of truck in this case for personal, family, or household purposes. NIADA also argues that the Sorchagas' use of the truck for work purposes establishes that the truck is not "normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1). But how Sorchaga and her husband used the truck is irrelevant to our inquiry. 16 C.F.R. § 700.1(a). If any ambiguity existed as to whether the truck was a "consumer product," we would resolve that ambiguity in favor of coverage of the truck. *Id.*

We therefore conclude that the district court neither erred as a matter of law nor abused its discretion in finding that the truck is a "consumer product" and in awarding attorney fees under the MMWA.

## VII. Fraud and breach of implied warranty of merchantability are not inconsistent theories of liability.

Ride Auto argues that fraud and breach of implied warranty of merchantability are inconsistent theories of liability because a judgment of fraud necessitates rescission of the contract, and therefore the district court erred in entering judgment in favor of Sorchaga on both claims.

Claims under contract and tort are not mutually exclusive. *See Riviera Imps., Inc. v. Anderson Used Cars, Inc.*, 268 Minn. 202, 206, 128 N.W.2d 159, 162 (1964); *see also McDonald v. Johnson & Johnson*, 776 F.2d 767, 770 (8th Cir. 1985) ("[C]ourts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law."). A district court may conclude that evidence supports both claims of common-law fraud and breach of warranty, so long as the appellant is not allowed "double recovery." *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 533 (Minn. 1986). Moreover, despite Ride Auto's assertion to the contrary, a fraudu-

lent contract is voidable, not void, and a finding of common-law fraud does not immediately vitiate the contract. *Hatch v. Kulick*, 211 Minn. 309, 310, 1 N.W.2d 359, 360 (1941); *see also Black's Law Dictionary* 1805 (10th ed. 2014) (defining "void" as "[o]f no legal effect" and "voidable" as "[v]alid until annulled"). With respect to the recovery available to a plaintiff, in a common-law-fraud claim, damages are awarded pursuant to the out-of-pocket rule. *Watkins*, 264 Minn. at 478-79, 119 N.W.2d at 487. In a breach-of-warranty claim, damages equal "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," Minn. Stat. § 336.2-714(2) (2016), plus any incidental damages. Minn. Stat. § 336.2-715 (2016).

The district court found in favor of Sorchaga on both her fraud and breach-of-implied-warranty claims. But Sorchaga did not "double recover." Under either the out-of-pocket rule for fraud or the remedy provisions of the UCC, Sorchaga's damages were the same: the purchase price of the truck ($12,950.68) less the value of the truck received ("valueless" or $0) plus incidental damages ($1,415.35). *Compare Watkins*, 264 Minn. at 478-79, 119 N.W.2d at 487, *with* Minn. Stat. §§ 336.2-715, -716. Even if we agreed with Ride Auto, Ride Auto would only escape paying attorney fees. Sorchaga received attorney fees because the MMWA permits the award of attorney fees to any consumer who suffers damages as a result of a breach of warranty. 15 U.S.C. § 2310(d)(1)-(2). It would be unreasonable to deny a consumer who has been injured by both the merchant's fraud and its breach of implied warranty attorney fees under the MMWA, because it would be contrary to the purpose of the MMWA to discourage merchants from breaching warranties.

Ride Auto relies on *Osborn v. Will* for the proposition that fraud voids the contract and prevents Sorchaga from recovering on a breach-of-warranty claim. 183 Minn. 205, 236 N.W. 197 (1931). In *Osborn*, respondents warranted that the house appellants purchased from them had a waterproof basement and they would repair it if it leaked. *Id.* at 207, 236 N.W. at 199. Appellants brought a fraud claim against respondents after discovering that the basement was not waterproof and after respondents' repairs failed to remedy the situation. *Id.* at 208, 236 N.W. at 199. The court acknowledged that appellants' remedy in contract did not preclude appellants from bringing a fraud claim. *Id.* at 210, 236 N.W. at 200. But, the court also stated, "[w]here there is a warranty or guaranty covering the same matters as the oral fraudulent representations and the defrauded party *relied solely on the warranty or guaranty, there can be, of course, no recovery for the fraud." Id.* at 210, 236 N.W. at 200 (emphasis added). The court's discussion in *Osborn* goes to the reliance element of fraud—that, for a plaintiff to prevail on a fraud claim, the fact-finder must find that the plaintiff relied on the defendant's oral misrepresentations and not on the warranty. *Id. Osborn* is wholly inapplicable to whether a plaintiff can recover in both fraud and breach of warranty where sufficient evidence supports both claims.

We conclude that the district court did not err in ordering judgment on both Sorchaga's fraud and breach-of-warranty claims.

## VIII. The district court did not clearly err in finding that Western Surety is liable for any monetary loss incurred by Ride Auto.

Ride Auto and Western Surety argue that the district court clearly erred

in finding that Western Surety is liable for any monetary loss incurred by Ride Auto because Sorchaga failed to offer the surety bond into evidence. Sorchaga argues that Ride Auto and Western Surety admitted in their second amended answer that Western Surety provides Ride Auto's dealer surety bond. We review a district court's findings of fact for clear error. *Rasmussen*, 832 N.W.2d at 797. We review questions of statutory interpretation de novo. *Lee*, 775 N.W.2d at 637.

Minn. Stat. § 168.27, subd. 24 (2016), requires used-motor-vehicle dealers to carry a bond with a corporate surety in the amount of $50,000 for "the benefit of the state of Minnesota and any transferor, seller, or purchaser of a motor vehicle for any monetary loss caused by failure of the licensee to meet the obligations [under this section]." A violation of Minnesota law triggers the bond holder's liability under the statute. *Metro Milwaukee Auto Auction v. Coulson*, 604 N.W.2d 111, 116 (Minn. App. 2000), *review denied* (Minn. Mar. 14, 2000).

In its second amended answer, Ride Auto and Western Surety admitted the allegation that "Western Surety provided the surety bond necessary to license Ride Auto as a dealer under Minn. Stat. § 168.27." This court has held that "a bond written in conformity with a statute must be read with the statute, and the statute limits the scope of the bond." *Metro Milwaukee Auto Auction*, 604 N.W.2d at 114. At a minimum, the bond holder under the statute is liable for "*any monetary loss* caused by the failure of the licensee" to follow Minnesota law. Minn. Stat. § 168.27, subd. 24 (emphasis added). The terms of the bond cannot alter Western Surety's basic liability under the statute for *any* monetary loss to Sorchaga caused by Ride Auto. *Metro Milwaukee Auto Auction*, 604 N.W.2d at 114; *see also Carousel Autos.,*

*Inc. v. Gherity*, 511 N.W.2d 472, 476 (Minn. App. 1994) (concluding that the surety company was liable pursuant to the statute), *aff'd* 527 N.W.2d 813 (Minn. 1995).

Ride Auto cites *Westbrook State Bank v. Aetna Cas. & Sur. Co.* for the proposition that "the express language of the bond will prevail over inconsistent statutory provisions unless the purposes of the statute would be frustrated." 437 N.W.2d 738, 740-41 (Minn. 1989) (quotation omitted). *Westbrook State Bank* is inapplicable here. First, that case concerned a bond issued under Minn. Stat. § 565.25, subd. 2 (1988), and not Minn. Stat. § 168.27, subd. 24. Second, there are no inconsistent statutory provisions at issue in this case. Third, holding Western Surety liable for the basic liabilities under the statute is in "accord with public policy to protect persons doing business with Minnesota-licensed car dealers from frauds and defaults by those dealers." *Metro Milwaukee Auto Auction*, 604 N.W.2d at 115. Permitting Western Surety to escape liability after it admitted that it held the bond surety for Ride Auto would frustrate the purposes of the statute. *See Westbrook State Bank*, 437 N.W.2d at 740-41. We therefore conclude that the district court did not err in finding that Western Surety holds the bond surety for Ride Auto.

Western Surety also argues that it should not be liable for attorney fees because Minn. Stat. § 168.27, subd. 24, only covers "monetary loss" to consumers and attorney fees under a contingent-fee agreement are not a monetary loss. This court held in *Metro Milwaukee Auto Auction* that "[a]ttorney fees incurred in connection with a seller's effort to cure a dealer's default are within the ambit of the broad language 'any monetary loss.'" 604 N.W.2d at 117. Western Surety is therefore liable for both the damages and attor-

ney fees awarded to Sorchaga by the district court.

## DECISION

Because Ride Auto forfeited its argument that the judgment is void, we do not review this argument. Because Ride Auto's summary-judgment and judgment-as-a-matter-of-law motions are not within our scope of review, we do not review them. Because sufficient evidence supports the district court's findings of fact related to Sorchaga's claim of fraud, we affirm the district court's conclusion as to fraud. Because fraud is a "circumstance" that renders a warranty disclaimer ineffective, and Sorchaga did not waive the implied warranty by inspection, we affirm the district court's conclusion as to breach of implied warranty of merchantability. Because the truck is a consumer product within the meaning of the Magnuson-Moss Warranty Act, we affirm the district court's award of attorney fees under that act. Because Sorchaga did not double recover, the district court permissibly entered judgment in favor of Sorchaga on both her claims of fraud and breach of warranty. Because Western Surety is the surety-bond holder for Ride Auto and Minn. Stat. § 168.27, subd. 24, requires the surety-bond holder to cover "*any monetary loss* caused by the failure of the licensee," we affirm the district court's judgment against Western Surety.

**Affirmed.**